Canyonville Bible Academy, Plaintiff-Appellant, v. Louis M. Lobemaster and Bernice Lobemaster, Defendants-Appellees.

Gen. No. 11,063.

Fourth District.

May 8, 1969.

Robert F. Quinn, of Wood River, Thompson, Mitchell, Douglas & Neill, and Fred E. Arnold, of St. Louis, Missouri, for appellant.

Phillip A. Theis and William W. Schooley, of Granite City, for appellee.

TRAPP, P. J.

Plaintiff, Canyonville Bible Academy, a corporation, appeals from a judgment that plaintiff take nothing by its suit upon a promissory note executed by the defendants, Louis M. Lobemaster and Bernice Lobemaster.

On February 18, 1964, defendants executed a promissory note in the sum of $12,694.22, payable to the order of Lobmaster Trailer Sales, Inc., in 84 monthly installments of $151.13, commencing March 20, 1964. The note was endorsed by the corporate payee to Jefferson Bank and Trust Company of St. Louis, Missouri, (hereinafter referred to as the Bank), on February 20, 1964, which was prior to the due date of the first installment payment.

Default was subsequently made as to the installment due April 20, 1965. On June 16, 1966, the Bank assigned all right, title and interest in the note to plaintiff.

No question is raised by the defendants as to the following: (1) the validity of their signatures, (2) the acquisition of the note by the Bank prior to the date of the first installment payment, for value and in good faith in the regular course of business, and (3) the actual assignment of the note by the Bank to plaintiff on June 16, 1966.

The defenses asserted arise from certain collateral facts. The original payee of the note, Lobmaster Trailer Sales, Inc., was owned and operated by one Samuel D. Lobmaster who made a practice of discounting notes representing trailer sales with the Bank. Several years before the transaction in question Samuel D. Lobmaster,

by written instrument dated February 27, 1960, personally guaranteed payment as they might mature of all loans discounted by Lobmaster Trailer Sales, Inc., with the Bank. Additionally, on or about December 30, 1963, at the insistence of the Bank, Samuel D. Lobmaster procured a life insurance policy with Prudential Life Insurance Company in the amount of $200,000 upon his own life for additional security upon transactions which he had personally guaranteed to the Bank. On December 30, 1963, Samuel D. Lobmaster also assigned the policy to the Bank as collateral. The life insurance policy contained the following "Beneficiary Provision":

"If this Policy matures by death, the proceeds shall be payable in one sum to Jefferson Bank and Trust Company, a Corporation, of St. Louis, Missouri, its successors or assigns, beneficiary, creditor of the insured, as its interest may appear, and the balance of the proceeds, if any, to Canyonville Bible Academy, of Canyonville, Oregon, beneficiary, or, if said Academy is not in existence, to the Estate of the insured."

"It is agreed that a sworn statement submitted to the company by a creditor beneficiary, its successors or assigns, after the death of the insured as to the amount of its claim against the insured at the time of the insured's death shall be binding upon such beneficiary, its successors or assigns, and payment made in accordance with such statement shall discharge the company from all liability as to such payment."

Samuel D. Lobmaster was killed in an airplane crash on February 25, 1964, five days after the negotiation of the litigated note to the Bank. On affidavit of a bank officer that Samuel D. Lobmaster's indebtedness to the Bank

exceeded $200,000, the insurance company paid the proceeds of the policy to it.

At the time of Samuel D. Lobmaster's death, his indebtedness to the Bank, including guaranties, exceeded $600,000, but after payment by primary obligors it was reduced to approximately $200,000. The bank originally set up a reserve fund with the $200,000, and subsequently charged certain defaulted primary obligations against it. With the consent of the plaintiff, Canyonville Bible Academy, the Bank charged the remaining $9,674.30 due on the Louis and Bernice Lobemaster note against the reserve account on condition that the note be assigned to the plaintiff.

After Samuel D. Lobmaster's death, on April 8, 1964, his executors entered into an agreement with one A. C. Naeger and Jacklyn S. Naeger, whereby they assumed certain liabilities of Samuel D. Lobmaster to the Bank which included the note in question. Thereafter, A. C. Naeger paid the installments through March of 1965. The Bank was not a party to this agreement, and did not agree to a substitution of obligors or guarantors of the note in question. The agreement was never presented to the Bank.

Three affirmative defenses are pleaded. The first was that the pledge of the insurance policy acted as a removal of assets from the estate of Samuel Lobmaster, and the assets so removed were used to pay the note pursuant to an agreement between the defendants and Samuel Lobmaster. The apparent theory of removal of assets from the estate is that somehow the estate, and not the plaintiff, should benefit. If this theory were true, we do not see how it would relieve the defendants of liability. However, in fact, by the terms of the policy the plaintiff was a primary beneficiary, and the Samuel Lobmaster estate was a beneficiary contingent upon the

nonexistence of the plaintiff. The Lobmaster estate has not been called upon to satisfy the obligation, nor, so far as it appears, any other obligation now within the reserve account created, and the estate does not make any claim here upon the basis of the note. That estate retains the proceeds received upon the original discount of the note. If assets were removed from anywhere they would appear to have been removed from plaintiff's control.

The second affirmative defense is that the note was made payable to the Lobmaster Trailer Sales, Inc., and there was never a valid assignment or purchase of the note for value.

Under section 3-201 of the Uniform Commercial Code (Ill Rev Stats 1963, c 26, § 3-201) transfer is provided for as follows:

> "(1) Transfer of an instrument vests in the transferee such rights as the transferor has therein, except that a transferee who has himself been a party to any fraud or illegality affecting the instrument or who as a prior holder had notice of a defense or claim against it cannot improve his position by taking from a later holder in due course."

In the Illinois Annotated Statute, the Illinois Code Comment under this section is the following interpretation:

> "The first clause of this subsection changes the rule under the first part of § 49 of the Illinois NIL (§ 49 of the NIL with variations), which provided 'where the holder of an instrument payable to his order transfers it *for value* without indorsing it, the transferer vests in the transferee such title as the transferee [transferer] had therein' (emphasis supplied). This subsection eliminates the re-

quirement of value for purposes of transferring the rights of the holder. It is in accord with Illinois case law indicating that a valid transfer may be made by way of gift: Rothwell v. Taylor, 303 Ill 226, 135 NE 419 (1922) ; Rankin v. Race, 318 Ill App 230, 47 NE2d 383 (1st Dist 1943) ; petition for leave to appeal denied 321 Ill App xiv; City Nat'l Bank & Trust Co. v. Oberheide Coal Co., 307 Ill App 519, 30 NE2d 753 (1st Dist 1940) ."

Additionally, under the Uniform Commercial Code Comment in the Illinois Annotated Statute is the following:

"2. The transfer of rights is not limited to transfers for value. An instrument may be transferred as a gift, and the donee acquires whatever rights the donor had."

██ Under section 3–201 of c 26, Ill Rev Stats (1963), it is quite clear that any transfer of an instrument transfers all rights of the transferor, except in the specific case noted as an exception. Since the Bank was a holder in due course and plaintiff was not a prior holder, the plaintiff by transfer from the Bank acquired the rights of a holder in due course irrespective of the question of value. Also we think that since the guaranty by Samuel Lobmaster was general and involved many notes which the Bank was required to handle and questions could arise as to whether certain liabilities really existed or could be paid out of the insurance proceeds, a consideration in the nature of a detriment to plaintiff was involved in agreeing to satisfaction of the guaranty from the insurance fund.

The third affirmative defense is that the estate of Samuel Lobmaster accepted the assumption of liability on the note by A. C. Naeger and Jacklyn Naeger. Since this agreement did not involve the Bank, and in fact

was not entered into until 47 days after the Bank became a holder in due course, the agreement could not possibly affect the Bank's status as a holder in due course. The undisputed testimony is that the Bank did not accept the Naegers as substitute debtors or guarantors. If the Bank had accepted them in place of Samuel Lobmaster's guaranty, the Bank would not have been entitled to collect from the insurance proceeds.

Since the Bank could unquestionably have pursued its legal remedy upon the note against the defendants, we see nothing which prevented it from transferring the note to plaintiff. The Bank was no more required to satisfy the defendants' obligation from the insurance fund than it was to satisfy any other part of the $600,000 owed the bank at Samuel Lobmaster's death from the fund in lieu of collecting from the primary obligors.

We conclude that the transfer of the defendant's note by the Bank to plaintiff gave plaintiff the Bank's status as a holder in due course, and the note is enforceable by plaintiff against defendant.

The cause is reversed and remanded with directions to enter judgment in favor of plaintiff and against the defendants in the amount of $9,674.30 with interest at 7% per annum from June 16, 1966, and reasonable attorneys' fees not to exceed 15% of the amount due at the time of suit and costs.

Reversed and remanded.

SMITH and CRAVEN, JJ., concur.