718 P.2d 1017

**GREAT WESTERN BANK AND TRUST COMPANY, an Arizona corporation, Plaintiff/Appellee/Cross-Appellant.**

**v.**

**PIMA SAVINGS AND LOAN ASSOCIATION, an Arizona corporation, Defendant/Appellant/Cross-Appellee.**

No. 2 CA–CIV 5458.

Court of Appeals of Arizona, Division 2, Department A.

Jan. 30, 1986.

Review Denied May 6, 1986.

Beus, Gilbert, Wake & Morrill, P.C. by Neil Vincent Wake, Martin A. Aronson and Susan M. Segal, Phoenix, for plaintiff/appellee/cross-appellant.

Slutes, Sakrison, Grant & Pelander, P.C. by Tom Slutes and Mark Rubin, Tucson, for defendant/appellant/cross-appellee.

## OPINION

HATHAWAY, Chief Judge.

Pima Savings and Loan Association (Pima) contests the granting by the trial

court of summary judgment in favor of Great Western Bank and Trust Company (Great Western). Pima urges this court to reverse the trial court and grant summary judgment in its favor or, in the alternative, find an issue of material fact and remand the case for further proceedings. Great Western cross-appeals from that portion of the judgment below denying it attorney's fees. We reject the arguments of both Pima and Great Western and affirm the trial court.

Pima issued three checks to Transamerica Title Insurance Company (Transamerica), as the payee on September 30, 1983. These checks were later negotiated to Great Western on December 6, 1983. The checks were given by Pima pursuant to its agreement to be the permanent lender for the purchase of three office condominium units located adjacent to the Rillito River in Pima County, Arizona. Transamerica acted as trustee title holder of the property, pursuant to a subdivision trust, as well as escrow agent. Great Western was the interim construction lender and held a first deed of trust on the property. On August 30, 1983, Pima approved loans for the purchase of the condominium units. As part of the agreement, Great Western's loan was to be paid off and in return Pima would obtain first secured position. The escrow was established with Transamerica, and on Friday, September 30, 1983, Pima issued the checks after giving its approval to Transamerica to close the transaction. Transamerica conveyed title to the purchasers and the deeds were recorded. Transamerica did not, however, deposit the checks on September 30.

Over the weekend of October 1 and 2, 1983, serious flooding occurred in the Rillito River basin which destroyed the condominium project. On Monday, October 3, 1983, Pima stopped payment on all three checks. As stated above, the checks were later endorsed to Great Western. This lawsuit followed. Based upon the checks, summary judgment was granted in favor of Great Western in the amount of $610,-927.16. The trial court denied, however, Great Western's request for attorney's fees. This appeal and cross-appeal followed.

Pima raises three issues on appeal: (1) Neither Transamerica nor Great Western achieved holder-in-due-course status because (a) Transamerica did not give value for the checks and (b) Great Western was not a holder-in-due-course in its own right; (2) even if Great Western was a holder-in-due-course, personal defenses are available to Pima due to Transamerica's status as payee; (3) Pima has viable personal defenses including (a) failure of a condition precedent, (b) failure of consideration and (c) default under the deed of trust.

Great Western raises two issues on appeal: (1) There is no reasonable basis in the record to support the denial of attorney's fees and (2) in the alternative, the trial court's failure to give any reason for its denial of fees requires remand for exercise of the court's discretion.

## I. WERE TRANSAMERICA AND GREAT WESTERN HOLDERS–IN–DUE–COURSE?

■ A holder-in-due-course of a negotiable instrument must take the instrument for value in good faith and without notice of defenses. A.R.S. § 47–3302. Pima cites two reasons for denying that Transamerica gave value for the checks. First, Pima argues that as escrow agent, Transamerica was a mere conveyor of the funds and therefore could not have given value for the checks. A.R.S. § 47–3303 sets forth three methods by which a holder may give value for an instrument. Subsection (1) states that a holder takes the instrument for value to the extent that the agreed consideration has been performed. It is acknowledged, therefore, that consideration must flow from an escrow agent to a payor in order to achieve holder-in-due-course status. *Liebowitz v. Wright Properties, Inc.*, 427 So.2d 783 (Fla.Dist.Ct.App. 1983). Transamerica, however, did provide consideration for this transaction. Transamerica transferred title of the property to the purchasers, provided services as escrow

agent and insured title. Additionally on September 30, Pima received its deed of trust which is the consideration for which it payed $610,000. Therefore, the criteria of § 47–3303(1) was met.

■ Pima also urges that because Transamerica's obligations remained executory, it did not give value. The gist of Pima's argument is that on September 30, Transamerica was required to provide Pima with first secured status in the property. Section 47–3303(3) states: "A holder takes an instrument for value when he gives a negotiable instrument for it or makes an irrevocable commitment to a third person." Transamerica had made an irrevocable commitment as escrow agent to Great Western to pay off its secured interest and to Pima to obtain for it first secured status, i.e., to close the transaction. It was Pima's own actions in stopping payment of the checks that interferred with fulfilling this commitment. Therefore the criteria of A.R.S. § 47–3303(3) was met. Transamerica is a holder-in-due-course.

■ Great Western cannot be a holder-in-due-course in its own right since, at the time of its conveyance of the checks, it had notice of Pima's defenses. It, however, succeeds to Transamerica's holder-in-due-course status via the "shelter doctrine" codified in A.R.S. § 47–3201(A). See *Canyonville Bible Academy v. Lobemaster*, 108 Ill.App.2d 318, 247 N.E.2d 623 (1969); *UAW–CIO Local #31 Credit Union v. Royal Insurance Co. Ltd.*, 594 S.W.2d 276 (Mo.1980). Therefore, we find Great Western to be a holder-in-due-course.

## II. ARE PERSONAL DEFENSES AVAILABLE TO PIMA DESPITE GREAT WESTERN'S HOLDER–IN–DUE–COURSE STATUS?

■ Under most circumstances, a holder-in-due-course is free from all personal defenses. A.R.S. § 47–3305(1). Additionally, a payee may be a holder-in-due-course. A.R.S. § 47–3302(B). The payee, however, will not generally hold the instrument free from personal defenses, since the payee will usually have dealt with the drawer or maker of the instrument. A.R.S. § 47–3305; *Standard Finance Company Limited v. Ellis*, 657 P.2d 1056 (Haw.Ct.App. 1983); *American Bank & Trust Company v. Sunbelt Environmental Systems, Inc.*, 451 So.2d 1111 (La.Ct.App.1984); *Bank One of Columbus N.A. v. Myers*, 14 Ohio App.3d 196, 470 N.E.2d 485 (1984).

■ Transamerica dealt directly with Pima and therefore it is not free from Pima's personal defenses. Since Great Western's holder-in-due-course status derives from Transamerica, Pima may assert its personal defenses against Great Western.

## III. DO PIMA'S PERSONAL DEFENSES SURVIVE SUMMARY JUDGMENT?

■ Pima contends that a condition precedent to its duty to pay on the checks was that Pima receive first secured status on the property. Pima was to receive a first deed of trust when this transaction was completed, but it cites to no provision in the escrow agreement or contracts nor does it provide any other evidence to show that first secured status was a condition precedent. The escrow agreement does state conditions precedent, such as the necessity of Pima's consent to close the transaction, which it gave. It does not, however, require that a first deed of trust be provided before the transaction closed. Obviously, if payment on Pima's checks had not been stopped, Great Western's interest would have been paid off and at that time Pima would have achieved first secured status. Viewing the evidence in the light most favorable to Pima, we find no express or implied condition precedent.

■ Pima also argues that its failure to receive the first deed of trust was a failure of consideration. The defense of failure of consideration is a viable personal defense against the holder of a negotiable instrument. *Amos Flight Operations, Inc. v. Thunderbird Bank*, 112 Ariz. 263, 540 P.2d 1244 (1975). However, it was Pima's own action which stopped the flow of consideration. Its own employees acknowl-

**368**

edged that Great Western was to be paid out of the checks, at which time Great Western would release its first secured position. A party who prevents another's performance cannot claim breach by the other party. See e.g., *Matson v. Bradbury*, 40 Ariz. 140, 10 P.2d 376 (1932); *Fowler v. Dana*, 7 Ariz.App. 72, 436 P.2d 166 (1968); *Williams v. Nall*, 4 Ariz.App. 416, 420 P.2d 988 (1966).

Finally, Pima alleges that there was a default under the deed of trust when the improvements fell into the river on October 1 and 2, 1983. Neither Transamerica nor Great Western had any duty to protect Pima against risk of loss to Pima's security after Pima made its loan and took its security. Therefore, any potential default under the deed of trust is irrelevant to this action. Furthermore, the doctrine of equitable conversion forecloses Pima's argument. The doctrine of equitable conversion dictates that courts of equity regard the substance and not the mere form of contracts and consider things directed or agreed to be done as having actually been performed. *Lebrecht v. Beckett*, 96 Ariz. 389, 396 P.2d 13 (1964). Lenders and secured parties in real estate transactions can be bound by the above doctrine as well as venders and purchasers. *Cuna Mutual Insurance Society v. Dominguez*, 9 Ariz. App. 172, 450 P.2d 413 (1969). Pima's performance was conditioned on its consent to close the transaction which it gave. At that point, Pima was unconditionally obligated to supply the funds and Great Western as third-party beneficiary could enforce payment on the checks. Any subsequent events are irrelevant to Pima's obligation to supply the funds. We hold that Pima failed to present a material fact on the issue of consideration.

## IV. IS GREAT WESTERN ENTITLED TO ATTORNEY'S FEES?

Great Western argues that the trial court abused its discretion in failing to award it attorney's fees pursuant to A.R.S. § 12–341.01(A). This court is required to uphold the trial court's exercise of discre-

tion if there exists a reasonable basis in the record for denying fees. *Associated Indemnity Corporation v. Warner*, 143 Ariz. 567, 694 P.2d 1181 (1985). In reviewing the record, we find that there existed novel issues as to Great Western's status as a holder-in-due-course, Transamerica's status as escrow agent and holder-in-due-course, and the availability of personal defenses. We, therefore, hold that it was within the trial court's discretion to deny attorney's fees. Great Western also argues that since the trial court did not enumerate its reasons for denying attorney's fees, the case should be remanded on this point. This argument was rejected in *Associated Indemnity* when the supreme court held that, although it was preferable for the trial court to give reasons, it was not required to do so as long as the record supports its exercise of discretion.

Appellees have requested and we grant its costs and attorney's fees on appeal.

Affirmed.

HOWARD, P.J., and FERNANDEZ, J., concur.