752 P.2d 18

Paul PETTAY and Marcia Pettay, husband and wife; Clifford Ashley and Jimmie Ashley, husband and wife; and Pettay's Arizona Dirt Brokers, Inc., an Arizona corporation, Plaintiffs/Appellants,

v.

INSURANCE MARKETING SERVICES, INC. (WEST), an Arizona corporation, and Carl J. Winski, Jr., Defendants/Appellees.

No. 2 CA–CV 87–0240.

Court of Appeals of Arizona, Division 2, Department A.

Nov. 24, 1987.

Horne, Kaplan & Bistrow, P.C. by Thomas C. Horne, Phoenix, for plaintiffs/appellants.

Combs & Stoops, P.C. by Christopher A. Combs and Pamela K. Tonn, Phoenix, for defendants/appellees.

OPINION

HATHAWAY, Judge.

This appeal is taken from the judgment entered on a jury verdict rendered in favor of defendants in an action for breach of contract and fraudulent misrepresentation.

Appellant Paul Pettay (Pettay) is a contractor and owner of Pettay's Arizona Dirt Brokers, Inc. (ADB). He agreed in September 1984, to do an excavation job pursuant to a subcontract with a general contractor (Murray). Murray's bid, which had been accepted, was $969,000. Pettay agreed to perform its work for $750,000. Pettay had difficulty obtaining a loan which he needed to fund equipment rental and to cover his other expenses until he began receiving his draws for the work. He finally approached appellee Insurance Marketing Services, Inc., (IMS) in early October seeking a loan of $150,000, using his subcontract as collateral. He was told by appellee Carl Winski (Winski) that IMS was not a lender but was a broker. Winski explained to Pettay that as a broker, IMS would seek private investors to fund loans for applicants. IMS would put together a private placement offering for each loan and solicit participation by investors. Pettay was also told that investors would only accept real property as collateral and would lend up to 50% of the appraised value of the collateral.

Pettay then contacted appellant Clifford Ashley (Ashley) who owned approximately 22 acres of undeveloped land in the Chandler area. Ashley agreed to place his land as collateral for the loan from IMS. On October 6 or 7, Pettay and Ashley met with Winski. At this meeting Winski again explained the mechanics of the mortgage brokerage operation, including the relationship between the appraisal amount and the amount of the loan. Ashley represented that the Chandler property was worth $440,000, which, if true, would have enabled appellants to borrow the $150,000. Winski also explained the need to put together the private placement offering document, referred to as the "black book," which would include, inter alia, an appraisal of the property and a title report, along with the borrower's financial statements and tax returns.

On October 6, Pettay, who had already begun work on the job site, had a conversation with Murray during which Pettay was told that he had until October 14 to secure the necessary performance and completion bonds. If the bonds were not in place by then, Murray would require Pettay to give up the project. This conversation was memorialized in a letter from Murray to Pettay dated October 7. On either October 11 or 12, Pettay again met with Winski and told him of the deadline set by Murray. Pettay stated that he needed $25,000 by October 14 in order to remain on the job. He was told that the full $150,000 loan could not possibly be funded that quickly but that IMS would lend him the $25,000 from its own accounts. On October 13, that loan was funded and appellants were provided a letter that stated that IMS would use its "best efforts" to fund the loan appellants had requested. When questioned by Pettay about this, Winski explained that he could not give any guarantees, but if all the information he had been given could be verified and substantiated, the chances were nine out of ten that he could get the funds requested within ten days. Unfortunately, there were unforeseen problems and delays in satisfying the requirements necessary to the funding of the loan. Part of the land offered as collateral was "land locked" and an easement had to be obtained in order to provide access. This was discovered when the title report was prepared and received. The appraisal was delayed until some time in November because the independent appraiser lost the legal description. Pettay had also placed his house as collateral for the loan and there was some difficulty in determining the status of the two mortgages on his house. During this period, IMS made several other small loans to Pettay, mainly so that he could meet his payroll requirements. The large loan closed November 29 in the amount of $130,000. The loan amount was less than the $150,000 appellants had requested because the prop-

erty used as collateral was appraised at $266,500.

Pettay ran into difficulties in finishing the job and his actual costs far exceeded his original projections resulting in a loss rather than the anticipated profit. Ashley had to sell his land in order to repay the balance due on the loans. Appellants brought suit, alleging breach of contract and fraudulent misrepresentation. On appeal, they raise two issues: (1) the court erred in not admitting into evidence certain statements attributable to Winski; and (2) the court erred in denying a requested instruction on negligent misrepresentation. Appellants also challenge the award of attorney's fees. We affirm.

Appellants first complain about the trial court's rulings regarding cross-examination of Winski and the use of his deposition during cross-examination. Appellants argue that admissions made by Winski during his deposition were admissible during his cross-examination. We have reviewed the pertinent portions of the deposition. The question and answer at issue are:

Q. Have you ever, between the years 1980 and 1985, promised a loan by a certain date, refused to make the loan on that date, and then negotiated greater compensation to yourself or lower compensation for somebody else?

A. It's very difficult to give a yes or no answer to that question. As I say, circumstances vary from one transaction to another. I could answer that question both ways.

We do not find Winski's answer to be an admission.

■ Appellants next claim they should have been permitted to read from Winski's deposition to the jury. The court stated in chambers:

As to the first part that you just started reading of the depositions where you are asking the questions, I would prefer to have you ask the questions, because there seems to be so many objections in that deposition, and I will have to rule on each one of those as you went through it if you are reading it. There may be a curable—

*I think it will just be a lot better use of our time if you just ask the questions* and we will tackle the problems he was having with your questions you are asking him. (Emphasis added)

Rule 32(a)(2), Ariz.R.Civ.P., 16 A.R.S., states that "[t]he deposition of a party ... may be used by an adverse party for any purpose." The "any purpose" provision of the rule has been given a broad construction. See *Porterie v. Peters*, 111 Ariz. 452, 532 P.2d 514 (1975). Even assuming the trial court's ruling was erroneous, appellants were allowed full cross-examination of Winski at trial. The ruling of the trial court did not result in prejudice and any error was harmless. *Rimondi v. Briggs*, 124 Ariz. 561, 606 P.2d 412 (1980).

The second issue raised on appeal is the trial court's refusal to give appellant's requested jury instruction on negligent misrepresentation. They argue that negligent misrepresentation is not a separate cause of action from the fraudulent misrepresentation claim contained in the pleadings and therefore the court erred in not giving the requested instruction. Their position is that negligent misrepresentation comes within fraudulent misrepresentation with only a reduction of the scienter requirement and therefore does not have to be separately pled. We disagree.

■ In *Arizona Title Insurance and Trust Co. v. O'Malley Lumber Co.*, 14 Ariz.App. 486, 491, 484 P.2d 639, 644 (1971), a case involving a complaint for negligent misrepresentation, the court stated:

We note that there is disagreement as to whether the proper form of the action [for negligent misrepresentation] is one for negligence, subject to the usual negligence defenses, or one for fraud, but without the element of scienter, or perhaps a hybrid form of action. This issue has not been presented to us here.

Subsequently, the Arizona Supreme Court, in *Van Buren v. Pima Community College District Board*, 113 Ariz. 85, 87, 546 P.2d 821, 823 (1976), stated: "that damages would lie in a proper case of negligent

misrepresentation. ... A claim for relief for negligent misrepresentation is one governed by the principles of the law of negligence." Prosser also distinguishes between fraudulent and negligent misrepresentation and states that they are separate tort classifications. W. Prosser and W. Keeton, The Law of Torts, § 105 at 727, § 107 at 740 (5th ed. 1984). We believe that negligent misrepresentation is a separate tort which must be pled. It does not fall within the rubric of fraudulent misrepresentation as appellants argue. The only basis for the giving of the requested instruction would have existed if the issue of negligent misrepresentation, even though not pled, was tried with the consent of the parties. If this were the case, the instruction should have been given. *Loya v. Fong,* 1 Ariz.App. 482, 404 P.2d 826 (1965). We have reviewed the transcript and we find that appellants did not present evidence in support of this issue nor argue that negligent misrepresentation had been tried by consent. Their theory of the case was either that Winski made a promise to fund the loan in 10 days intending to do so and his failure to perform was a breach of their contract, or that Winski made the promise with the specific intention of not performing, thereby committing fraud. We find no error in not giving the requested instruction.

Appellants' final argument is that attorney's fees should not have been awarded at all, and if the award was proper, the amount awarded was an abuse of discretion. They first urge that because the case involved both a tort action and a contract action and because the fees were not allocated between defending against the two claims, no fees can be awarded, citing *Circle K Corporation v. Rosenthal,* 118 Ariz. 63, 574 P.2d 856 (App.1977). We believe that the rationale of *Circle K* is not applicable to the case before us. There the tort claim was separate and distinct and did not arise out of the contract. Here the tort claim is based on allegations that appellees fraudulently induced appellants to enter into the contract for the first loan by making promises they had no intention of keeping. Appellants' claim of misrepresenta-

tion could not exist but for the alleged breach of contract. *Sparks v. Republic National Life Insurance Co.,* 132 Ariz. 529, 647 P.2d 1127, cert. den. 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982). We find that attorney's fees were properly awarded.

The trial court has broad discretion in fixing the amount of attorney's fees. *Associated Indemnity Corporation v. Warner,* 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985). This discretion is limited only to the extent that "such award may not exceed the amount paid or agreed to be paid." A.R.S. § 12–341.01(B); *Lacer v. Navajo County,* 141 Ariz. 392, 396, 687 P.2d 400, 404 (App.1984). Appellants do not claim that this statutory limit was exceeded. Their sole argument is that payment of the fees would impose a financial hardship on Ashley. While consideration must be given to the hardship that an award of fees would impose on a party that is only one of several factors to be considered by the trial court. 143 Ariz. at 570, 694 P.2d at 1184. The trial court had before it the affidavit of Clifford Ashley and we must presume the court considered it when setting the amount of attorney's fees. The court's award of fees is discretionary and not reviewable by this court if the record contains a reasonable basis for the exercise of that discretion. We find no abuse of discretion.

Appellees are awarded attorney's fees and costs for this appeal pursuant to A.R. S. § 12–341.01 and Rule 21(c), Ariz.R.Civ. App.P., 17A A.R.S.

Affirmed.

LACAGNINA, C.J., and HOWARD, P.J., concur.