868 P.2d 335

Frank and Lorain KADISH, Marion L. Pickens; and the Arizona Education Association, a non-profit corporation, Plaintiffs–Appellants,

v.

ARIZONA STATE LAND DEPARTMENT, an agency of the State of Arizona; Joe T. Fallini, in his capacity as the State Land Commissioner, Defendants–Appellees.

No. 1 CA–CV 91–0110.

Court of Appeals of Arizona, Division 1, Department D.

July 13, 1993.

Review Denied March 1, 1994.

Sacks, Tierney & Kasen, P.A. by Sharon B. Shively, Thomas W. Pickrell, Phoenix, for plaintiffs-appellants.

Grant Woods, Atty. Gen. by Patricia J. Boland, Asst. Atty. Gen., Phoenix, for defendants-appellees.

## OPINION

GRANT, Presiding Judge.

This is an appeal from the trial court's denial of an award of attorney's fees to the plaintiffs-appellants. In 1981, Frank and Lo-

rain Kadish, Marion L. Pickens and the Arizona Education Association ("appellants"), represented by the Arizona Center for Law in the Public Interest ("the Center"), filed a taxpayer action challenging the validity of the fixed royalty provisions of Ariz.Rev.Stat. Ann. ("A.R.S.") section 27–234(B). The trial court dismissed the complaint, ruling that the statute did not violate the Arizona Enabling Act or the Arizona Constitution. Appellants subsequently prevailed in the Arizona Supreme Court and the United States Supreme Court.

Upon remand to the trial court, appellants requested an award of their attorney's fees incurred in all stages of the litigation. They sought fees pursuant to the private attorney general doctrine. This appeal is from the trial court's denial of appellants' fee application. We hold that the trial court abused its discretion in declining to award fees under the private attorney general doctrine.

## I. FACTS AND PROCEDURAL BACKGROUND

Appellants brought their action against the Arizona State Land Department and the State Land Commissioner ("appellees") and Cyprus Pima Mining Company. The court allowed Magma Copper Company, ASARCO Incorporated, James P.L. Sullivan, Eisenhower Mining Company and Can–Am Corporation (collectively "the mining defendants"), all holders of mineral leases, to intervene as defendants.

In their complaint, appellants maintained that the Arizona Enabling Act and Arizona Constitution required that all leased state lands be offered at their true value. Appellants alleged that A.R.S. section 27–234(B) violated the Enabling Act and Constitution by unlawfully providing for a flat rate royalty for minerals extracted from the leased land, thereby depriving the state school trust of millions of dollars annually.

Upon hearing cross motions for summary judgment, the trial court entered judgment in favor of the defendants. Following an appeal to this court, the matter was transferred to the Arizona Supreme Court. The Arizona Supreme Court held that A.R.S. section 27–234 violated Article 10 of the Arizona Constitution and Section 28 of the Enabling Act. *Kadish v. Arizona State Land Dept.,* 155 Ariz. 484, 747 P.2d 1183 (1987), *aff'd, ASARCO v. Kadish,* 490 U.S. 605, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989).

In that appeal, appellants sought an award of fees against appellees pursuant to the "substantial benefit doctrine," the "private attorney general doctrine" and A.R.S. section 12–348(A). *Id.* 155 Ariz. at 497–498, 747 P.2d at 1196–1197. The court concluded that A.R.S. section 12–348(A) did not apply to the case. *Id.* at 497, 747 P.2d at 1196. Two of the justices believed that an award of fees was proper under the substantial benefit doctrine or private attorney general doctrine. However, because the third justice who concurred on the merits withheld his concurrence on the attorney's fees question, another justice dissented on the underlying constitutional issue and one justice did not participate in the decision, the court lacked a majority or plurality in favor of a fee award and thus did not award fees. *Id.* at 498, 747 P.2d at 1197. Appellants' motion for reconsideration of the attorney's fees request was denied without comment.

In its mandate issued in February, 1988, the Arizona Supreme Court directed the trial court to conduct such proceedings as required to comply with the court's opinion. The opinion indicated that the case was remanded with instructions to enter judgment in favor of appellants declaring A.R.S. section 27–234 unconstitutional and invalid as it pertained to nonhydrocarbon mineral leases. *Id.* The supreme court also instructed the trial court to consider appellants' petition for special action relief and to grant such relief as might be appropriate and consistent with the supreme court's decision. *Id.*

Upon remand, the trial court entered judgment in which it included an order that "[a]ny and all claims the plaintiffs may have for attorney's fees may be presented to the Court at a later time realizing that the Defendants reserve the right to challenge the merits of such claims." Shortly before entry of that judgment, the mining defendants filed a petition for writ of certiorari in the United States Supreme Court. The Supreme Court

granted certiorari and affirmed the decision of the Arizona Supreme Court. *ASARCO, Inc. v. Kadish,* 490 U.S. 605, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989). Appellees were not parties in the United States Supreme Court proceedings.

Despite the trial court's request that appellants and appellees settle the attorney's fees issue without court intervention, the parties were unable to do so. Appellants, therefore, filed an application for attorney's fees in the trial court, seeking an award of fees to be paid by the state pursuant to the private attorney general doctrine. Appellants did not request an award against the mining defendants because shortly before the appeal of the dismissal of their complaint, appellants and the mining defendants stipulated to waive any claims for costs and attorney's fees that each might have against the other in either the trial court or appeals proceedings. The stipulation provided that the agreement did not preclude appellants from seeking an award of attorney's fees and costs from the state.

In response to the motion for fees, appellees argued that the court should not award fees for the following reasons: (1) the state was merely a passive or nominal party, (2) the Arizona Supreme Court's "denial" of a fee award was res judicata as to the question, (3) the private attorney general doctrine did not apply because, as against the state, the doctrine was preempted by A.R.S. section 12–348, (4) appellants failed to apportion the fees, (5) the requested hourly rate of $200 was not reasonable under the circumstances, and (6) applying the requested multiplier to an enhanced hourly rate was not justified.

The trial court denied the fee application without stating its reason for doing so. This appeal from the order denying a fee award was timely filed.

## II. DISCUSSION

### A. Standard of Review

■ The record before this court does not contain any indication of the trial court's reasoning in denying an award of fees to appellants. Arizona courts have noted that A.R.S. section 12–341.01 does not require

that the trial court state its reasons for denying a fee award, *Associated Indemnity Corp. v. Warner,* 143 Ariz. 567, 571, 694 P.2d 1181, 1185 (1985); *Great Western Bank and Trust Co. v. Pima Sav. and Loan Ass'n,* 149 Ariz. 364, 368, 718 P.2d 1017, 1021 (App.1986). Similarly, we know of no requirement in the court-applied private attorney general doctrine that the trial court must set forth its reasons for denying a fee award under that doctrine. We reiterate, however, that the better practice is for trial court judges to indicate on the record the factors taken into account and reasons for denying a discretionary fee award. *See Associated Indemnity,* 143 Ariz. at 571, 694 P.2d at 1185; *Grand Real Estate, Inc. v. Sirignano,* 139 Ariz. 8, 14, 676 P.2d 642, 648 (App.1983). Because the reason for the denial of the fee application does not appear in the record, we must examine each argument against the fee award made by appellees to determine whether any of them would support the denial as a matter of law or as a reasonable exercise of the trial court's discretion.

■ Appellees argued below that the doctrine of res judicata and state law preemption of the private attorney general doctrine precluded an award of fees. These arguments involve questions of law and thus are reviewed *de novo* by this court to determine whether either argument provides a legal basis for the trial court's denial of fees. *See City of Scottsdale v. Thomas,* 156 Ariz. 551, 552, 753 P.2d 1207, 1208 (App.1988).

■ If neither of those issues supplies a legal basis for denying the fee application, we must examine whether the trial court abused its discretion. An award of fees under the private attorney general doctrine is at the discretion of the trial court. *Arnold v. Dept. of Health Services,* 160 Ariz. 593, 609, 775 P.2d 521, 537 (1989). We must uphold the trial court's exercise of its discretion if the record contains a reasonable basis for the court's denial of fees. *Pettay v. Ins. Mktg. Services, Inc. (West),* 156 Ariz. 365, 368, 752 P.2d 18, 21 (App.1987); *Great Western Bank,* 149 Ariz. at 368, 718 P.2d at 1021. To sustain the denial of fees where the court's reasoning is not contained in the record, an

examination of the record must reveal some reasonable justification for the denial. *See Sirignano,* 139 Ariz. at 14, 676 P.2d at 648.

## B. Res Judicata Argument

■ As noted above, appellants requested an award of fees in their appeal from the trial court's dismissal of their complaint. Two Arizona Supreme Court justices would have awarded fees against appellees under the substantial benefit doctrine or the private attorney general doctrine. *Kadish,* 155 Ariz. at 498, 747 P.2d at 1197. The third justice who concurred in the majority decision, however, did not concur in the portion of the opinion permitting the allowance of fees, and the two other justices did not consider the fees request. *Id.* The court's opinion thus indicated that "[t]here being neither a majority nor plurality in favor of a fee award, no fee allowance is ordered." *Id.*

Appellees opposed the fee award application filed upon remand. They characterized this statement as a "denial" of a fee award and asserted that it was res judicata on the question of fees and thus that appellants could not request fees in the trial court. In response, appellants claimed below, as they do on appeal, that the doctrine of res judicata does not apply in this case and that if any preclusion doctrine applies it is "law of the case." They maintain, however, that the law of the case doctrine did not operate to prevent the trial court from addressing the fee application because the supreme court did not arrive at a decision on the fee request and because the law on the private attorney general doctrine changed between the mandate and the trial court's consideration of the case on remand.[1]

We agree with appellants that res judicata is not the correct doctrine to apply in this case. Under the doctrine of res judicata, judgment on the merits in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. *Chaney Bldg. Co. v. City of Tucson,*

148 Ariz. 571, 573, 716 P.2d 28, 30 (1986). In the case before us the alleged prior decision on the fees request was in the same action, not in a prior action.

"Law of the case" concerns the practice of refusing to reopen questions previously decided in the same case by the same court or a higher appellate court. *A & A Concrete, Inc. v. White Mountain Apache Tribe,* 781 F.2d 1411, 1418 (9th Cir.), *cert. denied,* 476 U.S. 1117, 106 S.Ct. 2008, 90 L.Ed.2d 659 (1986).

■ The law of the case doctrine provides that once an appellate court rules on a legal question, that decision is the law of that case on the issue decided in all subsequent proceedings in both trial and appellate courts provided the facts, issues and evidence remain substantially the same. *Dancing Sunshines Lounge v. Industrial Comm'n of Arizona,* 149 Ariz. 480, 482, 720 P.2d 81, 83 (1986); *Ziegler v. Pima County Superior Court,* 134 Ariz. 390, 393, 656 P.2d 1251, 1254 (App.1982). "[T]he general rule that the lower tribunal must follow the mandate of the higher court is part of the doctrine of the 'law of the case.'" *Jordan v. Jordan,* 132 Ariz. 38, 40, 643 P.2d 1008, 1010 (1982).

■ "Law of the case" is a label commonly applied to several distinctive sets of problems. In the context of the instant case it refers to the fundamental obligation of every court to follow the rulings of a higher court. 18 *Charles A. Wright, et al. Federal Practice and Procedure* section 4478 (1981); *see also* 1 B. *James W. Moore et al., Moore's Federal Practice* § 0.404[1] (2d ed. 1993).

■ The law of the case doctrine does not have the same conclusive effect as the doctrine of res judicata. *Jordan,* 132 Ariz. at 41, 643 P.2d at 1011. Law of the case does not apply where the issue was not actually decided in the earlier decision or the decision is ambiguous. *Dancing Sunshines,* 149 Ariz. at 483, 720 P.2d at 84; *Employers Mut. Cas. Co. v. McKeon,* 170 Ariz. 75, 77, 821 P.2d 766, 768 (App.1991). Additionally, the supreme

---

1. Appellants also argue that appellees waived their right to raise procedural bars to the application for attorneys' fees when they failed to object to the paragraph in the judgment stating that "[a]ny and all claims the Plaintiffs may have

for attorneys' fees may be presented to the Court at a later time realizing that the Defendants reserve the right to challenge the merits of such claims." Because of our resolution of the res judicata issue, we need not reach this argument.

court has stated that the doctrine should not be applied if it would result in a manifestly unjust result. *Sibley v. Jeffreys*, 81 Ariz. 272, 305 P.2d 427 (1956).

■ The law of the case doctrine would normally apply here if our supreme court had denied an award of fees to appellants. We conclude, however, that the supreme court in *Kadish* did not actually decide the attorney's fees application because there was neither a majority nor plurality decision either in favor of or against a fee award. The court rendered no decision regarding fees that could have constituted the law of the case in further proceedings. Thus, upon remand the trial court was free to entertain appellants' attorney's fees application and was not barred from awarding such fees. *See Allen R. Krauss Co. v. Fox*, 137 Ariz. 203, 204, 669 P.2d 980, 981 (App.1983) (upon remand, trial court ordinarily has the power to determine attorney's fees questions; an express direction in the mandate is not necessary for the trial court to award fees).[2]

## C. Statutory Preemption of Private Attorney General Doctrine

■ Appellees argued below that the court should deny appellants' fee application because fees could be awarded against the state only under A.R.S. section 12–348, which preempted an award of fees against the state under the private attorney general doctrine. Appellees pointed out that the *Kadish* court had specifically ruled that appellants did not fall within any of the provisions of A.R.S. section 12–348 and thus that the statute did not authorize an award of fees against the state. Appellees also maintained below, as they do on appeal, that *Arnold v. Dept. of Health Services* established the applicability of the private attorney general doctrine only to counties, not to the state.

We disagree with appellees' arguments for two reasons. First, nothing in A.R.S. section 12–348 bars an award of fees against the state under another statute or under equitable grounds. Paragraph (A) of section 12–348 contains instances in which the court *shall* award fees against the state or a city, town or county. An award of fees under A.R.S. section 12–348(A) to a party prevailing against the state is mandatory absent an affirmative statutory prohibition. *Estate of Walton*, 164 Ariz. 498, 501, 794 P.2d 131, 134 (1990); *Cortaro Water Users' Ass'n v. Steiner*, 148 Ariz. 314, 317, 714 P.2d 807, 810 (1986).

Neither A.R.S. section 12–348(C), which specifies circumstances in which a fee award under the statute is discretionary, nor A.R.S. section 12–348(H), which specifies instances in which the entitlement to fees under the statute does not apply, precludes awards of fees against the state on grounds other than those in A.R.S. section 12–348. Thus, A.R.S. section 12–348 provides when fees shall be awarded against government entities and specifies when fees may not be awarded under the statute, but does not bar awards of fees pursuant to other statutes or equitable theories. Accordingly, we hold that A.R.S. section 12–348 does not preempt application of the private attorney general doctrine as a basis for an award of fees against the state.

The second reason for our rejection of appellees' argument is that since the argument was made below and in appellees' brief on appeal, this court has awarded fees against the state pursuant to the private attorney general doctrine in *Arizona Center for Law in the Public Interest v. Hassell*, 172 Ariz. 356, 837 P.2d 158 (App.1991). In light of the award in *Hassell*, appellees' contention that the only authority in Arizona for application of the private attorney general doctrine allows it to be applied only to counties is not correct.

Neither the doctrine of res judicata, law of the case, the provisions of A.R.S. section 12–348, nor Arizona case law prevented the trial court from awarding fees to appellants under the private attorney general doctrine.

---

2. Appellees also argue that the Arizona Supreme Court remanded *Kadish* only with respect to the request for special action relief. The supreme court in *Kadish* did instruct the trial court to consider the special action relief sought by appellees. The *Kadish* court, however, did not indicate that the special action relief was the *only* matter to be considered on remand. In fact, the court also instructed the trial court to enter judgment in favor of appellants. *Kadish*, 155 Ariz. at 498, 747 P.2d at 1197.

Therefore, we next discuss whether the trial court abused its discretion in denying the fee application.

## D. Discretionary Denial of Fee Award

 Although Arizona law recognized the private attorney general doctrine in the mid–1970's, *see State v. Boykin,* 112 Ariz. 109, 114, 538 P.2d 383, 388 (1975), the doctrine was not applied to award fees in a reported Arizona case until *Arnold.* The *Arnold* court explained that

the private attorney general doctrine is an equitable rule which permits courts in their discretion to award attorney's fees to a party who has vindicated a right that:

(1) benefits a large number of people;

(2) requires private enforcement; and

(3) is of societal importance.

The purpose of the doctrine is "to promote vindication of important public rights."

160 Ariz. at 609, 775 P.2d at 538 (citations omitted). The "American Rule," by which each party bears its own attorney's fees absent a statute or contract directing otherwise has been eroded. Because of that and the benefits conferred on Arizona citizens by public interest litigation, the *Arnold* court adopted and applied the private attorney general doctrine to award fees to plaintiffs who filed an action against the state and a county to compel them to provide statutorily-mandated mental health care to indigent chronically mentally ill persons. *Id.*[3]

 The doctrine was more recently applied by this court in *Hassell* to award attorney's fees in favor of plaintiffs who prevailed on appeal in their challenge to statutes that substantially relinquished the state's claims to riverbed lands. The *Hassell* court award-ed fees because each of the private attorney general doctrine criteria outlined in *Arnold* was met:

The right that appellants have pressed belongs to the state itself. Its vindication benefits large numbers of Arizonans and is of great societal importance. And because its vindication required a direct challenge to a statute adopted by the Arizona Legislature, the right could only have been privately enforced.

172 Ariz. at 371, 837 P.2d at 173. The court awarded fees under the doctrine against both the public entities among the appellees and the private appellees. *Id.*[4]

 Having established that Arizona precedent allows such fee awards, we conclude that the present case meets the criteria for an award under the private attorney general doctrine. First, the resolution of the litigation benefits a large number of people in the state, including taxpayers and public school students and personnel. As recognized by Justices Feldman and Gordon in *Kadish,* appellants sought no recovery for themselves and achieved no personal gain or advantage; they did not act for their own benefit or for the benefit of a particular class or group, but instead acted to vindicate the interests of the entire citizenry of the state. *Kadish,* 155 Ariz. at 498, 747 P.2d at 1197.

Second, the vindication of the right asserted by appellants is of societal importance. Appellants established the right of the state, on behalf of the public school trust, to receive royalties for mineral ore based on the true value rather than on a flat rate. In doing so, they vindicated rights protected by the Arizona Enabling Act and Constitution. The enforcement of this right has conferred a

---

3. The *Arnold* court affirmed an award of fees under the private attorney general doctrine against Maricopa County. The trial court had awarded fees against the state pursuant to A.R.S. section 12–348(A)(5), and the state did not dispute that the statute applied to the case. *160* Ariz. at 608, 775 P.2d at 536.

4. Appellees argue on appeal that fees should not be awarded against them because they were merely obeying a duly-enacted statute before it was found to be unconstitutional. They cite *Roe v. Arizona Board of Regents,* 23 Ariz.App. 477, 482, 534 P.2d 285, 290 (1975), *vacated on other*

*grounds,* 113 Ariz. 178, 549 P.2d 150 (1976), for this proposition. Although *Hassell* did not discuss this argument, the decision in *Hassell* effectively put this argument to rest because the fee award there was in part against a state agency that sought to uphold a duly-enacted statute. Federal courts have reached similar conclusions. *See Rosenfeld v. Southern Pacific Co.,* 519 F.2d 527, 530 (9th Cir.1975) (rejecting argument that fee award was an abuse of discretion because appellant was simply obeying a state statute that was ultimately held to be unconstitutional).

substantial benefit on the citizens of the state. Prior to this litigation, Arizona was the only state with a fixed, nonnegotiable royalty rate for mineral leases, and it had one of the lowest royalty rates in the nation. *Kadish,* 155 Ariz. at 496, 747 P.2d at 1195. The Arizona Auditor General concluded in a 1980 report that the state may have lost millions of dollars each year under mining leases based on the fixed royalty provisions of A.R.S. section 27–234(B). AUDITOR GENERAL, A PERFORMANCE AUDIT OF THE ARIZONA STATE LAND DEPARTMENT, at 14, 21 (1980). As a result of the decision in *Kadish,* the legislature enacted a new mineral royalty statute, and the state negotiated new leases under an appraisal process that gives the state a fair rate of return on mineral leases. *See* A.R.S. section 27–234 (1991).

Third, as in *Hassell,* vindication of the right appellants asserted required a legal challenge to a statute adopted by the state legislature and thus could only have been privately enforced. Clearly, a state agency that is charged with carrying out state law would not be in a position to challenge the validity of a duly enacted statute; this responsibility accordingly must fall on private parties, such as taxpayers of the state, as happened in this case.

 Appellees do not argue that appellants have not satisfied each of the criteria for an award under the private attorney general doctrine. They argue instead that the trial court properly denied an award of fees to appellants because appellees were passive or nominal parties and thus that it would be inequitable to award fees against them.

This court recently examined "nominal party" status for purposes of an award under A.R.S. section 12–348 in *Bromley Group, Ltd. v. Ariz. Dept. of Revenue,* 170 Ariz. 532, 826 P.2d 1158 (App.1991) and *Larkin v. State ex rel. Rottas,* 175 Ariz. 417, 857 P.2d 1271 (App.1992). In *Bromley,* a taxpayer filed a property tax valuation appeal naming both Maricopa County and the State Department of Revenue ("DOR") as defendants. DOR filed a notice of appearance in which it declared that it was a nominal party in the litigation. In a cross-claim against DOR, the county alleged that DOR had a duty to defend and that its assertion that it was a nominal party was incorrect. The county conducted the defense of the property tax appeal. The tax court established values for the taxpayer's parcels lower than those originally fixed by the county and awarded fees against the state pursuant to A.R.S. section 12–348(A)(2).

On appeal, DOR argued that it was a nominal party within the meaning of A.R.S. section 12–348(G)(4) and thus that the tax court erred in awarding attorney's fees against it. The *Bromley* court disagreed. It noted that in *Cortaro Water Users' Ass'n v. Steiner* and *Mission Hardwood Co., Inc. v. Registrar of Contractors,* 149 Ariz. 12, 716 P.2d 73 (App.1986), the courts held that in actions for administrative review, a state agency named as a defendant in a superior court action may lose its nominal party status by taking an active part in the court proceedings and advocating on its own behalf. 170 Ariz. at 539, 826 P.2d at 1165. The *Bromley* court went on to conclude that

> abstention from actively participating as an advocate is not the only defining characteristic of a nominal party. To qualify as a nominal party, a defendant must also lack any pecuniary or proprietary stake in the outcome of the action. If the action may result in liability in damages or other specific relief, a party cannot qualify as a nominal party even by scrupulously avoiding active participation in the lawsuit.

*Id.* The court held that because the case concerned primary property taxes, which were levied and assessed by counties in part on behalf of the state, DOR had a direct pecuniary interest in the outcome of the litigation and thus was not a nominal party even assuming it never was an advocate on the merits in the litigation. *Id.* at 540, 826 P.2d at 1166. In *Larkin v. State ex rel. Rottas,* this court stated that "nominal party" was akin to a disinterested stake holder under A.R.S. section 12–348. 126 Ariz.Adv.Rep. at 23.

In the case before us, appellees filed an answer and responded to appellants' request for production of documents. Appellees also filed in the trial court prior to the first appeal

a two page response in opposition to appellants' motion for partial summary judgment and a three page response to appellants' memorandum and proposed form of judgment. Appellees filed what they characterize as a "very short" appeal brief in the Arizona Supreme Court. Appellees were not a party in the United States Supreme Court proceedings.

The mining defendants took the lead in defending the flat rate royalty provision, but appellees nevertheless participated in the litigation as advocates and took the position that the statute was constitutional and valid under the Enabling Act. Even though *Cortaro* and *Mission Hardwood* involved judicial reviews of administrative decisions and fee awards under A.R.S. section 12–348, we believe their conclusions regarding nominal party status also apply to statutory challenges and fee awards under the private attorney general doctrine. Once a state agency goes beyond merely making an appearance in an action and becomes a participant in the merits of the litigation, it should not be able to completely escape liability for fees under the private attorney general doctrine by arguing that it took a less active role than the private defendants.

 However, even if appellees' participation in the litigation was so minor as to qualify them as passive or nominal parties, we believe that under *Bromley* they cannot be considered nominal parties so as to completely avoid liability for appellants' attorney's fees. The fact that *Bromley* and *Larkin*, like *Cortaro* and *Mission Hardwood,* concern fee awards under A.R.S. section 12–348 does not negate its impact on fee awards against the state under the private attorney general doctrine. In applying the *Bromley* court's reasoning to fee awards under the private attorney general doctrine, we conclude that a state agency with a pecuniary or proprietary stake in the outcome of the litigation does not qualify as a nominal party. The state here was not merely a disinterested holder of funds as in a garnishment. of wage assignment. An agency whose functions are affected by a challenged statute which it is responsible for administering and upholding is not a nominal party in litigation

involving the statute, even if the agency elects to allow private parties to take the lead in asserting the validity of the statute.

 The state land department is charged with administering all laws relating to lands owned by, belonging to and under the control of the state; the department has charge and control of all state lands and the products of such lands. A.R.S. §§ 37–102(A) and (B). The summons in any action against the state involving state land or the products of state land is to be served on the land commissioner. A.R.S. § 37–102(D). The commissioner is to perform all powers and duties vested in or imposed on the land department. A.R.S. § 37–132(A)(1). Accordingly, the land department and commissioner have more than a nominal or passive interest in litigation to determine whether the state lands mineral lease royalty rate applied by the department is valid. Appellees thus cannot remove themselves from liability for appellants' attorney's fees by taking the position that they are only passive or nominal parties. We do find, however, that because appellees were not parties in the United States Supreme Court proceedings and, in fact, at that stage of the proceedings concurred in the position of the appellants, the award of fees against appellees should not include fees incurred in the United States Supreme Court proceedings.

### E. Determination of Amount of Award

Appellants urge us to determine the amount of the attorney's fees award if we hold that the trial court abused its discretion in denying a fee award. As this litigation has existed since 1981, we believe that judicial economy and the interests of justice require this court to determine the fee award from the record before us in the hopes that this case may thereby be concluded.

#### 1. The "lodestar"

 Appellants argue that a "lodestar" should be used in determining the amount of fees to be awarded. The lodestar is the product of the hours expended times a reasonable hourly rate of compensation. *State v. Tocco,* 173 Ariz. 587, 590, 845 P.2d 513, 516 (App.1992); *London v. Green Acres*

*Trust*, 159 Ariz. 136, 765 P.2d 538 (App.1988); *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 186 n. 5, 673 P.2d 927, 930 n. 5 (App.1983). This method is generally used where fees are not actually paid on an hourly basis and where the prevailing party does not have an agreement with its counsel setting the attorney's billing rate for the representation. *Id.* The private attorney general doctrine imposes no express limitation on the hourly reimbursement rate to be applied in making an award. *Larkin*, 175 Ariz. at 417, 857 P.2d at 1271. The prevailing market rate is the proper amount to be used as the reasonable hourly rate of compensation for the lodestar calculation when the prevailing party has been represented by public non-profit counsel. *Arnold*, 160 Ariz. at 608, 775 P.2d at 536; *Tocco*, 173 Ariz. 587, 845 P.2d 513.

▉ Clearly, the use of a lodestar to determine the fee award is appropriate in this case. Therefore, we must use the prevailing market rate to determine the reasonable hourly rate of compensation. Determination of the prevailing market rate would take into consideration the difficulty and quality of the work performed, the experience and reputation of counsel, and the nature and significance of the result. We must then determine the hours expended in the trial court and in the first appeal for which fees should be awarded. (As noted above, hours expended in the United States Supreme Court proceedings will not be included in an award against appellees.)

▉ The appellants argue that the trial court is no better qualified to make the determination of the fee award than this court. This litigation left the trial court in 1985 when Judge John R. Sticht granted the appellees' and the mining defendants' motions for summary judgment. Since then the case has moved throughout the Arizona appellate courts and the United States Supreme Court. More than one-half of the attorney's fees requested by the appellants pertains to work performed in these courts. The final judgement was entered by Judge Mark W. Armstrong when he summarily denied appellants' Application for Award of Attorneys' Fees. Judge Michael J. O'Melia had no involvement with this matter other than to rule on the appellants' motion for additional relief. We see no point in remanding this matter to the trial court if the only purpose of the remand would be to take advantage of the trial court's customarily better position from which to assess an attorney's fees application. All of the figures necessary to the calculation of the fee award are in the record before us. The calculations have been fully briefed by both parties. The record is complete in this regard. *See Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 947 (1st Cir.1984); *Copeland v. Marshall*, 641 F.2d 880, 901 (D.C.Cir.1980). As the United States Supreme Court has stated "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

▉ Almost the entirety of this litigation was handled for the appellants by attorney David S. Baron of the Arizona Center for Law and the Public Interest. His hours, as documented in his affidavit attached as Exhibit A to the application, total 816.8. From that total we subtract the 294 hours related to the United States Supreme Court petition in which the appellees were not involved. We therefore have determined from the record before us that the number of compensable hours of attorney time is 522.8.

The appellants have requested a prevailing market rate of $200.00 per hour. We bear in mind that this requested rate covers work from 1981 to 1991. The appellees argue for a billing rate of no more than $142.50 per hour. Appellees specifically make the point that Mr. Baron's reputation and experience ten years ago were not what they were in 1991. We have carefully reviewed the record in this regard, and we point out the obvious—that this court routinely makes awards of attorney's fees in appeals and therefore is aware of prevailing market rates. Based on the foregoing we find that $200.00 per hour is reasonable for the work performed in this case. We therefore determine the award of attorney's fees to be $104,560.00. Additionally the record contains an affidavit of costs in the total amount of $4,437.03. Of that figure, $4,154.80 are for costs incurred in the United States Supreme Court and will be subtracted

for reasons previously stated. Furthermore, $436.99 in costs were previously awarded by the Arizona Supreme Court. Therefore, it appears from the record that no costs remain to be awarded.

### 2. The "enhancer"

■ Appellants maintain that once the lodestar is established, the court may adjust the amount up or, in other words, enhance the award depending on factors such as the result obtained, the contingent nature of the fee, and the limited availability of counsel to take the case, citing *Hensley v. Eckerhart*, 461 U.S. at 434, 103 S.Ct. at 1940. Since *Hensley* was decided, however, the United States Supreme Court has established that the lodestar figure should be adjusted upward or enhanced only in rare and exceptional circumstances. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565–566, 106 S.Ct. 3088, 3098–3099, 92 L.Ed.2d 439 (1986); *Blum v. Stenson*, 465 U.S. 886, 897–901, 104 S.Ct. 1541, 1548–1550, 79 L.Ed.2d 891 (1984). As explained by the *Pennsylvania* Court, in *Blum* the Court found that

> "[w]hen ... the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product *is presumed* to be the reasonable fee" to which counsel is entitled. [*Blum* ] at 897, 104 S.Ct. at 1548 (emphasis added).

*Blum* also limited the factors which a district court may consider in determining whether to make adjustments to the lodestar amount. Expanding on our earlier finding in *Hensley* that many of the *Johnson* factors "are subsumed within the initial calculation" of the lodestar, we specifically held in *Blum* that the "novelty [and] complexity of the issues," "the special skill and experience of counsel," the "quality of representation," and the "results obtained" from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award. 465 U.S., at 898–900, 104 S.Ct., at 1548–1550. Although upward adjustments of the lodestar figure are still permissible, *id.*, at 901, 104

S.Ct., at 1550, such modifications are proper only in certain "rare" and "exceptional" cases, supported by both "specific evidence" on the record and detailed findings by the lower courts. See *Id.*, at 898–901, 104 S.Ct., at 1548–1550.

478 U.S. at 565, 106 S.Ct. at 3098.

The United States Supreme Court has further discouraged enhancers in *City of Burlington v. Dague*, —— U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). Justice Scalia, writing for the court, said that an enhancement would duplicate factors already subsumed in the lodestar in a contingency fee case. Since the instant case is a contingency fee case an enhancer is inappropriate.

Reasoning from *Blum* was applied by this court in *London v. Green Acres Trust*, 159 Ariz. at 148, 765 P.2d at 550 (App.1988), to find that the trial court did not abuse its discretion in declining to enhance an award of attorney's fees calculated by the lodestar method. We likewise conclude that we need not enhance the lodestar figure.

### 3. Apportionment

■ Appellees argue that if any fees are awarded the fees should be apportioned to reflect only appellees' fair share. We find no direction in Arizona law regarding if or when fees should be apportioned among parties. Federal courts have noted that the issue of apportionment of fees is an unsettled area of law. *See Council for Periodical Distributors Ass'n v. Evans*, 827 F.2d 1483, 1487 (11th Cir.1987); *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 959 (1st Cir.1984). The *Evans* court explained that fees must not always, or even usually, be apportioned and that the trial court has discretion on when to apportion fees. 827 F.2d at 1487. The court noted that in cases in which two or more defendants actively participated in a constitutional violation, it may be appropriate to hold all defendants jointly and severally liable for attorney's fees or the court might divide the fees equally among the defendants. *Id.* The *Evans* court found that it was appropriate in the cases such as the one before it to apportion fees between the active instigator of the wrong and a more passive co-defendant who

had a more peripheral or ministerial role in the wrong. *Id.*

In the case before us there is not a "wrong" party and a "less wrong" party. None of the defendants acted wrongfully in complying with the statutory royalty rate or in arguing to uphold its validity. Appellees' argument, instead, is that the state should not bear the brunt of the fees awarded to appellants when the state land department and commissioner were mere passive parties in relation to the mining defendants.

We disagree. One of the purposes behind a fee award under the private attorney general doctrine is to encourage private parties to challenge state actions and enactments when necessary to vindicate important public rights. *See Arnold,* 160 Ariz. at 609, 775 P.2d at 537. The legislature has tacitly approved the policy behind fee awards under the private attorney general doctrine by enactment of A.R.S. section 12–348, which is the Arizona version of the Federal Equal Access to Justice Act (28 U.S.C. section 2412). *See Larkin,* 175 Ariz. at 417, 857 P.2d at 1271. The express legislative purpose of A.R.S. section 12–348 is to neutralize or reduce the economic deterrent faced by private parties seeking to litigate against unreasonable government action. *Id. citing New Pueblo Constructors, Inc. v. State,* 144 Ariz. 95, 696 P.2d 185 (1985).

In effect, the private party that challenges state action is stepping into the role of the state to protect and advance the interests of the citizenry. To this end, we do not find it unfair to hold the state responsible for the expenses incurred in protecting the rights of the citizenry. Furthermore, in a case such as this in which private defendants step in and conduct most of the defense of the state law, thus saving the expenditure of state resources, we do not believe the failure to apportion fees imposes an undue burden on the state. In addition, in this case the state's citizenry gained significant financial benefits due to the result achieved that would more than offset any attorney's fees award against the state.

### III. CONCLUSION

We hold that the trial court's consideration of appellants' attorney's fees application was not barred by res judicata, law of the case, nor is application of the private attorney general doctrine to award fees against the state preempted by A.R.S. section 12–348. We do not find in the record any reasonable basis for denial of an award of attorney's fees in favor of appellants and against appellees. Therefore, we hold that the trial court abused its discretion in denying an award of fees. By using the lodestar method, we have determined from the record that the trial court should set the amount of the fee award at $104,560.00. Therefore, the case is remanded with directions to the trial court to enter judgment on award of attorney's fees in the amount of $104,560.00.

Appellants request an award of their costs and attorney's fees incurred in this appeal. We note that the opening brief contains an affidavit of Thomas W. Pickrell, attorney for appellants, requesting fees in the amount of $3,594.50 for his service in attempting to settle the attorney fee issue with appellees before this appeal was taken. That amount will be considered with any application for attorney's fees on appeal. We grant the appellants' request for attorney's fees on appeal. Appellants may establish the amount of their award by complying with Rule 21, Arizona Rules of Civil Appellate Procedure.

CONTRERAS and CLABORNE, JJ., concur.