UNITED STATES of America,
Plaintiff, Appellant,

v.

Carlomagno GONZALEZ MEDINA,
Defendant, Appellee.

No. 85–1694.

United States Court of Appeals,
First Circuit.

Argued Feb. 4, 1986.
Decided July 30, 1986.

Everett M. de Jesús, Trial Atty., U.S. Dept. of Justice with whom José A. Quiles, Acting U.S. Atty., was on brief, for plaintiff, appellant.

Alberto F. Tellechea with whom Ambrette & Tellechea and Francisco López Romo, was on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, BREYER and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

In this case, the United States appeals from the district court's dismissal of a two-count indictment charging defendant-appellee Carlomagno González-Medina with (1) failing to file a report on the transportation of ten certificates of deposit from a place outside the United States to a place in the United States, in violation of 31 U.S.C. § 5316, and (2) making a materially false representation in a matter within the juris-

diction of an agency of the United States, in violation of 18 U.S.C. § 1001.

United States customs officers arrested the defendant on January 13, 1985 upon his arrival in Puerto Rico aboard a commercial airline flight from the Dominican Republic. The arrest occurred after a customs inspection revealed appellee's possession of ten certificates of deposit with an aggregate face value of $1,265,000. Customs officers conducted the inspection after the defendant denied having transported monetary instruments into the United States. The district court dismissed the indictment, reasoning (1) that whether a monetary instrument existed under 31 U.S.C. § 5316 depended on whether that instrument was negotiable under state law, and (2) that the certificates at issue did not meet negotiability requirements set forth by Puerto Rico's Uniform Negotiable Instruments Act (the Act), 19 L.P.R.A. § 1 *et seq.* For the reasons set forth below, we affirm.

Section 5316 requires individuals transporting monetary instruments with a value greater than $10,000 into the United States to report the transporting of the instruments upon arrival in the United States.[1] The parties agree with the district court that the characterization of the seized certificates as monetary instruments under § 5316 hinges upon whether the certificates are negotiable under Puerto Rico law. A conclusion that the instruments are not negotiable would require affirmance, since under such circumstances no crime would have been committed pursuant to either 31 U.S.C. § 5316 or 18 U.S.C. § 1001. *See United States v. Anzalone,* 766 F.2d 676, 680–83 (1st Cir.1985).[2]

For an instrument to be negotiable in Puerto Rico it must (1) be in writing and signed by the maker or drawer; (2) contain an unconditional promise or order to pay a sum certain of money; (3) be payable on demand, or at a fixed or determinable future date; (4) be payable to order or to bearer, and (5) if addressed to a drawee, that same be named or indicated with reasonable certainty. 19 L.P.R.A. § 2; B. Santiago-Romero, *Tratado de Instrumentos Negociables,* Editorial Universitaria, Rio Piedras, 1981, p. 46. Failure to comply with any of the aforestated requirements defeats negotiability. *Walla Corporation v. Banco Comercial de Mayaguez,* 114 D.P.R. 216, 219 (1983). The district court held that the certificates are not negotiable because they do not contain an unconditional promise to pay a certain sum of money.[3] The court relied on the second

1. There is no dispute that the seized certificates exceed $10,000 in value.

 Section 5316 provides in part:

 (a.) ... [A] person or an agent or bailee of the person shall file a report under subsection (b) of this section when the person agent, or bailee knowingly—

 (1.) transports or has transported, or attempts to transport or have transported, monetary instruments of more than $10,000 at one time—

 (A) from a place in the United States to or through a place outside the United States; or

 (B) to a place in the United States from or through a place outside the United States.

2. According to 31 U.S.C. § 5312, "monetary instruments" which must be reported include:

 (A.) United States coins and currency; and

 (B.) as the Secretary may prescribe by regulation, coins and currency of a foreign country, travelers checks, bearer negotiable instruments, bearer investment securities, bearer securities, stock on which title is passed on delivery, and similar material.

Title 31, § 103.11 of the Code of Federal Regulations expands this list to include:

 Coins or currency of the United States or of any other country, travelers' checks, money orders, investment securities in bearer form or otherwise in such form that title passes upon delivery, and negotiable instruments (except warehouse receipts or bills of lading) in bearer form or otherwise in such form that title passes upon delivery. The term bank checks, travelers' checks and money orders which are signed but on which the name of the payee has been omitted, but does not include bank checks, travelers' checks or money orders made payable to the order of a named person which have not been endorsed or which bear restrictive endorsements.

3. A copy of one of the seized certificates is reproduced in the appendix. Although the certificates state that they are "Not Negotiable," the district court correctly held that a certificate's label or a party's description of it is of no consequence in determining whether an instrument is negotiable under 19 L.P.R.A. § 2. *Wal-*

sentence of the "Notice to Assignees" section of the Spanish version of the certificates, to wit:

> Citibank reserves the right to set off any indebtedness due to it from any *named payee*, including any indebtedness which may have matured prior to the bank's acknowledging receipt of the assignment.

(Our translation) (emphasis added).[4] The district court reasoned that the term "named payee" (*beneficiario designado*) refers to the depositor or original obligee. It noted that the clause at issue would place a *third-party assignee* of the instrument in the *same* position as that of the *original depositor-obligee*, by forcing the former to lose by way of set off money owed to the bank by the latter. The district court found that the set off clause conditions the bank's promise to pay, and, therefore, destroys negotiability under the Act.[5]

The government agrees that "beneficiario designado" (named payee) refers to the original obligee. Yet it argues that the "set off" clause is assertable *only* against the third-party assignee who attempts to collect on the instrument, but *not* against, or with respect to, the debts of the original depositor/obligee. That is, the government argues that the bank can *only* exercise its right of set off with respect to the debts owed to the bank by the third-party assignee attempting to collect on the instrument. Thus, under the government's theory, a third-party assignee could collect the full face value of the instrument so long as he personally owed no debts to the bank. To support its view, the government relies on the *English* text of the set off clause, viz:

> Citibank reserves the right to set off any indebtedness due to it from any payee, including any indebtedness which may have matured prior to the Bank's acknowledging receipt of the assignee.

The English version of the clause does not contain the modifier "named," contrary to the Spanish version relied upon by the district court. Moreover, the English version of the first two sentences on the back of the certificates use the term "named payees," while subsequent sentences—including the set off clause and the provision for assignment—use the term "payee." In the government's view, this shows (1) that "named payee" and "payee" are not the same person; and (2) that since "named payee" is used in relation to deposits, then the term "named payee" refers to the original depositor, and not to subsequent third-party assignees.[6] Accordingly, the government argues that the set off clause does not allow the bank to assert against a third party a defense assertable against the original party to the instrument, and that, therefore, negotiability is not defeated.

The chief effect of an instrument being negotiable is that a holder in due course can generally enforce it unaffected by any defense which may exist between the original parties to the contract. *Tratado de Instrumentos Negociables, supra* at 24. Were the Spanish version of the clause applicable here, the bank would be conditioning its promise to pay a third-party

---

la Corp. v. Banco Comercial de Mayaguez, supra at 219; *Tratado de Instrumentos Negociables, supra* at 46.

**4.** As shown in the appendix, the certificates are written in both English and Spanish. The Spanish version of the set off clause reads:

> Citibank se reserva el derecho de compensación en cuanto a cualquier deuda con el Citibank de cualquier beneficiario designado en este certificado, incluyendo aquellas deudas que hayan vencido antes de acusar recibo de la cesión.

**5.** The district court correctly rejected the argument that the first sentence of the certificates' "Notice to Assignees" section, post, defeats nego-

tiability. As noted by the district court, said sentence does not require the bank's *approval* for an assignment to take place. See *Walla Corporation v. Banco Comercial de Mayaguez, supra.*

**6.** This interpretation makes sense since the terms of a contract should be interpreted as a whole, and not out of the context of all the other terms. 31 L.P.R.A. § 3475. *See generally* E. Vázquez-Bote, *Derecho Civil de Puerto Rico,* Barcelona, Ediciones Juridicas Generales S.A., 1973, T. III, V. I, p. 468; *Accord: Martin v. The Vector Co.,* 498 F.2d 16, 23 (1st Cir.1974).

holder of the certificate upon the absence of any debts owed to the bank by the original depositor/assignor. This would amount to a conditioning of promised payment that would defeat negotiability under the Act, precisely because holders in due course would *not* be protected from the bank's assertion of a defense against the original depositor. *See* R. Anderson, *Anderson on the Uniform Commercial Code*, 2d Ed., Rochester, The Lawyers Cooperative Pub. Co., 1971, Vol. 2, Sec. 3–112, cited with approval in *Walla Corp. v. Banco Comercial de Mayaguez, supra* at 219; *see also* F.K. Beutel, *Brannan's Negotiable Instruments Law Annot.*, 7th Ed., Cincinnati, The W.H. Anderson Co. 1948, p. 823 ("In the hands of a holder in due course, a negotiable instrument is not subject to set offs between maker and the payee."); *Cf. Thomas v. Ford Motor Credit Co.*, 48 Md.App. 617, 429 A.2d 277, 280–82 (1981) (provision that holder of contract was subject to claims and defenses which debtor could assert against assignee conditioned *promise to pay* and destroyed negotiability). Were the English version followed, however, the bank would only be allowed to offset the debts of the assignee attempting to collect on the instrument, and not those of the original depositor. Such a clause would not seem to destroy negotiability, since the protection given to the holder in due course of a negotiable instrument essentially encompasses defenses between parties with whom the holder has not dealt, but not those referring to the holder itself. *See* 10 C.J.S. *Bills & Notes* § 511 at 1130; *see generally Tratado de Instrumentos Negociables, supra* at 166. Thus, the question is which version is applicable in the present case:

The parties have cited no Puerto Rico authority—and we have found none—addressing the effect of irreconcilable English and Spanish texts on the negotiability of an instrument under 19 L.P.R.A. § 2. It does seem that the conflict has been resolved in ordinary contracts by favoring the debtor when the creditor has drafted the contract. *See, e.g., S.I.F. v. Peña-Plaza*, 100 P.R.R. 637, 644 (1972). Here,

however, Citibank is both the debtor and the one which drafted the terms of the agreement. In any event, Puerto Rico's Civil Code directs that the conflict between the Spanish and the English version of a statute be resolved in favor of Spanish, 31 L.P.R.A. § 13. *See Republic Security Corp. v. Puerto Rico Aqueduct and Sewer Authority*, 674 F.2d 952, 956 (1st Cir.1982). Yet the Puerto Rico legislature has neither adopted nor rejected the same approach for cases involving ordinary contracts, or for cases involving the question whether an instrument is negotiable under the Act. In view of the foregoing, we cannot determine which of the two versions is applicable here.

■ Negotiability must be determined by looking at the face of the instrument so as to maximize the effectiveness of negotiable paper in business transactions. *Tratado de Instrumentos Negociables, supra* at 47, 56. Ambiguity as to whether an instrument is negotiable hinders the utility of negotiability. Thus, when a writing is ambiguous with respect to negotiability, the conclusion to be reached is that it is not negotiable. *Anderson on the Uniform Commercial Code, supra* at § 3–104:4. A perusal of the record shows that there is no way of determining whether the certificates are negotiable solely by looking at the text of the instruments; it is impossible to determine which text—Spanish or English—is applicable in the present case. Accordingly, we cannot say that the certificates fall within the scope of negotiability encompassed by the Act.

■ The government nonetheless urges a finding of negotiability because only the "set off" clause can defeat negotiability here, and Puerto Rico's Civil Code prohibits set off "when any of the debts arise from a deposit, or from the obligations of the depositary ..." 31 L.P.R.A. § 3226. Appellant claims that as the bank's debt arose from a deposit, set off would not be appropriate, and, accordingly, cannot defeat negotiability in this case.

A contract of deposit (also referred to as *depositum* ) "is constituted from the time a person receives a thing belonging to another with the obligation of keeping and returning it." 31 L.P.R.A. § 4621. Thus, the depositary is obliged to keep the thing bailed, and, when required, to return it. *Treasurer v. Banco Comercial de Puerto Rico,* 46 P.R.R. 298, 300 (1934); J. Puig Brutau, *Fundamentos de Derecho Civil,* Barcelona, Ed. Bosch, 1977, T. II, V. II, p. 523, 539. The *depositum* does not confer upon the depositary the ownership of the things delivered thereunder. *Id.* at 544.

In cases of currency, however, the distinguishing marks of the *depositum* would vanish if the contract were to require a bank depositary to return, not the things bailed, but an equivalent of the same specie and quality. J. Garrigues, *Contratos Bancarios,* Madrid, 1958, p. 378. In such cases, the depositary has the authority to use and dispose of the bailed objects. *Fundamentos de Derecho Civil, supra.* As the depositor would (1) lose ownership of the objects deposited, and (2) obtain a credit against the depositary, *id.,* the relationship between the parties amounts to one between a creditor and a debtor not subject to the set off constraints of 31 L.P.R.A. § 3226. *Contratos Bancarios, supra* at 374–75, 384, 393. Thus, unless it were specifically required that the bank return the *same* objects originally deposited, a certificate of deposit cannot be construed to encompass a *depositum* contract within the purview of section 3226. *See Fundamentos de Derecho Civil, supra. Accord: Treasurer v. Banco Comercial de Puerto Rico, supra* at 300.

The record shows that the certificates at issue do not require the bank to return the same objects originally received when the contract was executed. The relationship between the parties is one between a creditor and a debtor not limited by 31 L.P.R.A. § 3226. *See Treasurer v. Banco Comercial de Puerto Rico, supra; see also Walla Corporation v. Banco Comercial de Mayaguez, supra* at 223. Accordingly, contrary to the government's view, the "set off" clause does not violate Puerto Rico's Civil Code.

 Finally, we should not lose sight of the fact that we are dealing with a criminal prosecution, which thus requires strict construction of the laws in question. *United States v. Anzalone, supra* at 680. The gross ambiguities surrounding the negotiability of the seized certificates simply cannot justify the prosecution of this case. Thus, we agree with the district court's decision to dismiss the indictment.

*Affirmed.*