716 A.2d 605

**Robert J. TRIFFIN, Appellee,**

v.

**Stacey Anne DILLABOUGH, and American Express Travel Related Services Company, Inc.**

**Appeal of AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC.**

**Robert J. TRIFFIN, Appellee,**

v.

**Robert LYNN, and American Express Travel Related Services Company, Inc.**

**Appeal of AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC.**

Supreme Court of Pennsylvania.

Submitted Oct. 17, 1996.

Decided Aug. 21, 1998.

Steven G. Sklar, Jenkintown, for American Exp. Travel Related Services Co., Inc.

Barkley Clark, Kansas City, MO, Pro Hac Vice Admission for American Exp. Travel Related Services Co., Inc.

Robert Triffin, Pro Se.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

NEWMAN, Justice.

Appellant American Express Travel Related Services Company, Inc. (American Express) asks this Court to decide whether certain of its money orders are negotiable instruments pursuant to the Pennsylvania version of the Uniform Commercial Code, 13 Pa.C.S. § 1101, *et seq.*, (Commercial Code) and if they are, whether appellee Robert J. Triffin (Triffin) has the rights of a holder in due course who may recover the face value of those money orders from American Express. We hold that the money orders in question are negotiable instruments and Triffin has the rights of a holder in due course, entitling him to recover the value of the money orders from American Express.

## FACTS & PROCEDURAL HISTORY

American Express, among other endeavors, sells money orders through its authorized agents. In a typical transaction, an agent collects an amount of cash from the purchaser, also known as the sender, equal to the face value of the money order plus a small fee. The sender receives a partially completed money order embossed with the amount of the money order and blank spaces for the sender to fill in his or her own name and address, the name of the payee and the date.

On an unknown date, three American Express money orders were stolen from the premises of one of its agents, Chase Savings Bank. In an apparently unrelated incident, one hundred American Express money orders were stolen while being

shipped to another agent, I.W. Levin & Company. When they were stolen, all of the money orders contained the pre-printed signature of Louis Gerstner, then Chairman of American Express, but they were blank as to amount, sender, payee and date.

On December 11, 1990, Stacey Anne Dillabough (Dillabough) presented two American Express money orders for payment at Chuckie Enterprises, Inc. (Chuckie's), a check cashing operation in Philadelphia. The money orders were in the amounts of $550.00 and $650.00, respectively, and listed Dillabough as the payee and David W. (last name indecipherable) of 436 E. Allegheny Avenue as the sender. On February 25, 1991, Robert Lynn (Lynn) presented one American Express money order at Chuckie's in the amount of $200.00, which listed himself as payee and Michael C. Pepe as the sender. In each instance, Charles Giunta (Giunta), the owner of Chuckie's, recognized Dillabough and Lynn from their previous visits to Chuckie's. Dillabough and Lynn provided photographic identification to Giunta and properly endorsed their money orders. Giunta paid the face amounts of the money orders to Dillabough and Lynn, less his standard 2 percent fee.

Giunta was unaware the American Express money orders that he cashed had been stolen. The two Dillabough money orders were stolen from the premises of Chase Savings Bank and the Lynn money order was stolen from the shipment to I.W. Levin and Company. After being cashed at Chuckie's, the money orders traveled the regular bank collection routes and were presented for payment at the United Bank of Grand Junction, Colorado. Because American Express had noted on its "fraud log" that the money orders were stolen, they were returned to Chuckie's bearing the stamp "REPORTED LOST OR STOLEN—DO NOT REDEPOSIT." American Express refused to pay Chuckie's the face amounts of the money orders. Chuckie's then sold the Dillabough and Lynn money orders to Triffin, a commercial discounter.[1] Pursuant to

---

1. Triffin testified that he regularly purchases various types of choses in action from members of the check cashing industry. Although a law

written agreements, Chuckie's assigned all of its right, title and interest in the money orders to Triffin.

Triffin filed separate complaints in the Court of Common Pleas of Philadelphia County (trial court) against Dillabough and American Express on July 16, 1992, and against Lynn and American Express on August 20, 1992, seeking payment of the money orders. The trial court consolidated the two actions. Triffin obtained default judgments against Dillabough and Lynn and proceeded to a non-jury trial with American Express. The trial court found that the money orders were not negotiable instruments and entered a verdict in favor of American Express. On appeal, the Superior Court reversed the trial court and held that the money orders were negotiable instruments and Triffin had the status of a holder in due course, entitling him to recover the face amount of the money orders from American Express. We granted American Express' Petition for Allowance of Appeal from the Order of the Superior Court, and we now affirm.[2]

## DISCUSSION

When this Court entertains an appeal originating from a non-jury trial, we are bound by the trial court's findings of fact, unless those findings are not based on competent evidence. *Thatcher's Drug Store v. Consolidated Supermarkets, Inc.*, 535 Pa. 469, 636 A.2d 156 (1994). The trial court's conclusions of law, however, are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts. *Id.*

### I. *Negotiability*

The Superior Court has described the purpose of negotiable instruments and the Commercial Code as follows:

school graduate, Triffin is not a member of the Pennsylvania Bar and he is proceeding *pro se* in this appeal.

**2.** Dillabough and Lynn did not appeal the default judgments entered against them to the Superior Court and they are not parties to the present appeal before this Court.

A negotiable instrument is an instrument capable of transfer by endorsement or delivery. Negotiability provides a means of passing on to the transferee the rights of the holder, including the right to sue in his or her own name, and the right to take free of equities as against the assignor/payee. [Citations omitted]. The purpose of the Commercial Code is to enhance the marketability of negotiable instruments and to allow bankers, brokers, and the general public to trade in confidence. [Citations omitted]. As a matter of sound economic policy, the Commercial Code encourages the free transfer and negotiability of commercial paper to stimulate financial interdependence.

*Manor Bldg. Corp. v. Manor Complex Assocs.*, 435 Pa.Super. 246, 252–53, 645 A.2d 843, 846 (1994) (*en banc*). With these principles in mind, we turn to a discussion of the American Express money orders at issue here.

The threshold question is whether the money orders qualify as negotiable instruments under Division Three of the Commercial Code, 13 Pa.C.S. § 3101, *et seq.*, which governs negotiability.[3] Both parties agree that if the money orders are not negotiable instruments then Triffin's claims against American Express must fail. Initially, we note that the Commercial Code does not specifically define the term "money order", nor does it provide a descriptive list of financial documents that automatically qualify as negotiable instruments. Instead, 13 Pa.C.S. § 3104(a) sets forth the following four part test to determine if a particular document qualifies as a negotiable instrument:

> (a) Requisites to negotiability.-Any writing to be a negotiable instrument within this division must:

**3.** On July 9, 1992, the Pennsylvania General Assembly enacted amendments to the Commercial Code, effective July 9, 1993. All of the transactions in this case occurred before the effective date of the 1992 amendments, and therefore, the Commercial Code as it existed before the 1992 amendments controls this case. References in this Opinion to the Commercial Code are to the Act of November 1, 1979, P.L. 255, No. 86, § 1, unless otherwise noted. Although the Commercial Code has been revised, its basic provisions survived the 1992 amendments. We expect that this Opinion will provide guidance for transactions conducted pursuant to the Commercial Code as amended in 1992.

(1) be signed by the maker or drawer;

(2) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this division;

(3) be payable on demand or at a definite time; and

(4) be payable to order or to bearer.

13 Pa.C.S. § 3104(a).

The Superior Court described the face of the money orders in question as follows:

Prior to being stolen[,] the American Express money orders read: "AMERICAN EXPRESS MONEY ORDER ... CHASE SAVINGS BANK ... DATE (blank). PAY THE SUM OF (blank), NOT GOOD OVER $1,000, TO THE ORDER OF (blank). Louis V. Gerstner, Chairman. SENDER'S NAME AND ADDRESS (blank). Issued by American Express Travel Related Services Company, Inc., Englewood, Colorado. Payable at United Bank of Grand Junction, Downtown, Grand Junction, Colorado." The two Dillabough instruments were in this form. The third Lynn instrument was identical, except it did not bear an authorized agent's name, e.g., Chase Savings Bank, and was not good for over $200.

*Triffin v. Dillabough,* 448 Pa.Super. 72, 82, 670 A.2d 684, 689 (1996). When presented at Chuckie's, the sections for date, amount, payee and sender had been completed.

The first requisite of negotiability, a signature by the drawer or maker, "includes any symbol executed or adopted by a party with present intention to authenticate a writing." 13 Pa.C.S. § 1201. "Authentication may be printed, stamped or written; it may be by initials or by thumbprint.... The question always is whether the symbol was executed or adopted by the party with present intention to authenticate the writing." 13 Pa.C.S. § 1201, Comment 39. Additionally, section 3307(a)(2) states that when the effectiveness of a signature is challenged, it is presumed to be genuine or authorized unless the signer has died or become incompetent.

13 Pa.C.S. § 3307(a)(2). Here, the drawer, American Express, affixed the pre-printed signature of Louis Gerstner, its then Chairman, to the money orders in question before forwarding them to its agents. American Express does not argue that Gerstner's signature was affixed to the money orders for any reason other than to authenticate them. Accordingly, the money orders satisfy the first requisite for negotiability.

The second requisite, American Express argues, is lacking because the money orders do not contain an unconditional promise or order to pay. Specifically, American Express claims that a legend it placed on the back of the money orders qualifies an otherwise unconditional order on the front directing the drawee to "PAY THE SUM OF" a specified amount "TO THE ORDER OF" the payee. The legend provides as follows:

*IMPORTANT*
*DO NOT CASH FOR STRANGERS*

THIS MONEY ORDER WILL NOT BE PAID IF IT HAS BEEN ALTERED OR STOLEN OR IF AN ENDORSEMENT IS MISSING OR FORGED. BE SURE YOU HAVE EFFECTIVE RECOURSE AGAINST YOUR CUSTOMER.

PAYEE'S ENDORSEMENT

According to American Express, this legend renders the order to pay conditional on the money order not being altered, stolen, unendorsed or forged and destroys the negotiability of the instrument.

We disagree. In a factually similar case, the Louisiana Court of Appeal construed a legend on the back of an American Express money order similar to the one at issue here. *Hong Kong Importers, Inc. v. American Express Co.*, 301 So.2d 707 (La.App.1974). The legend there stated "CASH ONLY IF RECOURSE FROM ENDORSER IS AVAIL-

ABLE. IF THIS MONEY ORDER HAS NOT BEEN VAL-
IDLY ISSUED OR HAS BEEN FRAUDULENTLY NEGO-
TIATED, IT WILL BE RETURNED." *Id.* at 708. The
money order also had the following language printed on its
face: "KNOW YOUR ENDORSER CASH ONLY IF RE-
COURSE IS AVAILABLE." *Id.* The Louisiana Court held
that the legend on the back and the language on the front did
not convert the money order into a conditional promise to pay,
but merely operated as a warning to the party cashing the
money order to protect himself against fraud. Although *Hong
Kong* was decided before Louisiana adopted the Uniform
Commercial Code, we find its rationale to be persuasive and
applicable to 13 Pa.C.S. § 3104.

■ American Express attempts to distinguish *Hong Kong*
by asserting that the legend in this case is more specific
because it explicitly conditions payment on the money orders
not being altered, stolen, unendorsed or forged. This argu-
ment misses the point. "Any writing which meets the require-
ments of subsection [ (a) ] and is not excluded under Section
[3103] is a negotiable instrument, and all sections of this
[Division] apply to it, *even though it may contain additional
language beyond that contemplated by this section.*" 13 Pa.
C.S. § 3104, Comment 4 (emphasis added). An otherwise
unconditional order to pay that meets the section 3104 re-
quirements is not made conditional by including implied or
constructive conditions in the instrument. 13 Pa.C.S.
§ 3105(a)(1). Moreover, purported conditions on an otherwise
negotiable instrument, that merely reflect other provisions of
the law, do not vitiate negotiability. *State v. Phelps,* 125 Ariz.
114, 608 P.2d 51 (1979); *see also Falk's Food Basket, Inc. v.
Selected Risks Ins. Co.,* 214 Pa.Super. 522, 257 A.2d 359
(1969); 4 William D. Hawkland & Larry Lawrence, Uniform
Commercial Code Series § 3–105:03 (Clark Boardman Calla-
ghan) (1994). Here, the alleged conditions on the back of the
money orders are nothing more than a restatement of Ameri-
can Express' statutory defenses against payment because of
alteration, 13 Pa.C.S. § 3407, theft, 13 Pa.C.S. § 3306(4),
absence of signature, 13 Pa.C.S. § 3401, and forgery, 13

Pa.C.S. § 3404. Contrary to American Express' claims, expressing those statutory defenses in a legend with the conditional phrase "THIS MONEY ORDER WILL NOT BE PAID IF ..." does not elevate the legend to a condition for the purposes of 13 Pa.C.S. § 3104(a) because it is merely a restatement of the defenses present in the Commercial Code. *See* 13 Pa.C.S. § 3104, Comment 4; *Phelps*. The legend is simply a warning that American Express has reserved its statutory defenses. Whether these defenses are effective against Triffin is a separate question to be answered after resolving the issue of negotiability. *See* 13 Pa.C.S § 3104, Comment 4. We hold, therefore, that the money orders contain an unconditional order to pay, and satisfy the second requisite of negotiability.

The third requisite, that the writing be payable on demand or at a definite time, and the fourth requisite, that the writing be payable to order or bearer, are clear from the face of the money orders and are not disputed by the parties. Thus, the American Express money orders qualify as negotiable instruments pursuant to 13 Pa.C.S. § 3104.

■ American Express contends that even if the money orders are facially negotiable, they should not be viewed as negotiable instruments because they were never issued or otherwise "placed in the stream of commerce." Issue is defined as "[t]he first delivery of an instrument to a holder or a remitter." 13 Pa.C.S. § 3102. Delivery is defined as the "voluntary transfer of possession." 13 Pa.C.S. § 1201. American Express argues that because the money orders were incomplete when stolen and subsequently completed without authorization, the money orders were never delivered and it should have no liability for them.

Authorized completion and delivery, however, are not listed as requisites to negotiability in section 3104. 13 Pa.C.S. § 3104. Moreover, section 3115 specifically permits the enforcement of incomplete and undelivered instruments and provides as follows:

(a) General rule.—When a paper whose contents at the time of signing show that it is intended to become an instrument is signed while still incomplete in any necessary respect it cannot be enforced until completed, but when it is completed in accordance with authority given it is effective as completed.

(b) Unauthorized completion.—*If the completion is unauthorized the rules as to material alteration apply (section 3407), even though the paper was not delivered by the maker or drawer*; but the burden of establishing that any completion is unauthorized is on the party so asserting. 13 Pa.C.S. § 3115 (emphasis added). Section 3407 provides that the defense of unauthorized completion discharges a party from liability to any person *other than a holder in due course.* 13 Pa.C.S. § 3407(a)(2); 13 Pa.C.S. § 3407(b). "A subsequent holder in due course may in all cases enforce the [negotiable] instrument according to its original tenor, and when an incomplete instrument has been completed, he may enforce it as completed." 13 Pa.C.S. § 3407(c); *see also National Loan Investors, L.P. v. Martin,* 488 N.W.2d 163 (Iowa 1992) (holder in due course can enforce notes completed without authorization where notes signed in blank); *Virginia Capital Bank v. Aetna Cas. & Sur. Co.,* 231 Va. 283, 343 S.E.2d 81 (1986) (subsequent holder in due course can enforce note as completed even though completion unauthorized). Additionally, section 3305 provides that a holder in due course takes a negotiable instrument free from the defense of non-delivery. *See* 13 Pa.C.S. § 3305, Comment 3.

When read together, sections 3115, 3407 and 3305 demonstrate that unauthorized completion and non-delivery do not prevent enforcement of an otherwise negotiable instrument. Instead, the three sections permit a holder in due course to enforce the undelivered instrument as completed. The Comment to section 3115 explains the rationale for this rule as follows:

Since under this [Division] (Sections 3305 and 3407) neither non-delivery nor unauthorized completion is a defense against a holder in due course, it has always been illogical

that the two together should invalidate the instrument in his hands. A holder in due course sees and takes the same paper, whether it was complete when stolen or completed afterward by the thief, and in each case he relies in good faith on the maker's signature. The loss should fall upon the party whose conduct in signing blank paper has made the fraud possible, rather than upon the innocent purchaser. The result is consistent with the theory of decisions holding the drawer of a check stolen and afterwards filled in to be estopped from setting up the non-delivery against an innocent party.

13 Pa.C.S. § 3115, Comment 5; *see also* 13 Pa.C.S. § 3407, Comment 4. The next question then, is whether Triffin has the rights of a holder in due course who can enforce the negotiable money orders.

## II. *Triffin's Status As A Holder In Due Course*

■ Section 3302(a) describes a holder in due course as follows:

(a) General rule.—A holder in due course is a holder who takes the instrument:

(1) for value;

(2) in good faith; and

(3) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

13 Pa.C.S. § 3302(a). Because the trial court held that the money orders were not negotiable instruments, it never answered the question of Triffin's status as a holder in due course. Ordinarily, determining the elements of holder in due course status is a task for the trier of fact. *Budget Charge Accounts, Inc. v. Mullaney*, 187 Pa.Super. 190, 144 A.2d 438 (1958); *Northside Bank v. Investors Acceptance Corp.*, 278 F.Supp. 191 (W.D.Pa.1968). In this case, however, where the facts are undisputed and conclusive, we can determine Triffin's holder in due course status as a matter of law. *See UAW–CIO Local # 31 Credit Union v. Royal Ins. Co.*, 594 S.W.2d

276 (Mo.1980); *see also Manufacturers and Traders Trust Co. v. Murphy*, 369 F.Supp. 11, 13 (W.D.Pa.1974), *aff'd*, 517 F.2d 1398 (3d Cir.1975).

Triffin obtained the money orders from Chuckie's pursuant to a written agreement by which Chuckie's assigned all of its right, title and interest in the money orders to Triffin. Triffin could not become a holder in due course in his own name because he had notice of American Express' defenses when he took the money orders from Chuckie's. 13 Pa.C.S § 3302(a)(3). However, Triffin could acquire the *status* of a holder in due course from Chuckie's through the assignment if Chuckie's was a holder in due course because a transferee acquires whatever rights the transferor had, even if the transferee is aware of the defenses to enforcement. 13 Pa.C.S. § 3201; *see also Finalco, Inc. v. Roosevelt*, 235 Cal.App.3d 1301, 3 Cal.Rptr.2d 865 (1991); *DH Cattle Holdings Co., v. Kuntz*, 165 A.D.2d 568, 568 N.Y.S.2d 229 (1991); *Great Western Bank and Trust Co. v. Pima Sav. and Loan Ass'n*, 149 Ariz. 364, 718 P.2d 1017 (1986). Therefore, the focus of our inquiry is whether Chuckie's was a holder in due course.

The parties do not dispute that Chuckie's took the money orders for value. Giunta testified that he paid Dillabough and Lynn the face value of the money orders, minus a two percent fee. Thus, section 3302(a)(1) is satisfied. The second element of section 3302(a), good faith, is defined as "[h]onesty in fact in the conduct or transaction concerned."[4] 13 Pa.C.S. § 1201. The evidence established that Giunta recognized Dillabough and Lynn from previous transactions and required them to present photographic identification. Additionally, although the trial court did not discuss each element of Chuckie's holder in due course status, it did opine in a

4. The 1992 amendments to the Commercial Code define good faith specifically for use in Division Three as "[h]onesty in fact and the observance of reasonable commercial standards of fair dealing." 13 Pa.C.S. § 3103(a) (1992). The added requirement of "the observance of reasonable commercial standards of fair dealing" to the definition of good faith appears to impose a stricter test on prospective holders in due course than did the previous definition. We offer no opinion, however, about whether Giunta's conduct satisfies this new good faith standard.

discussion of its legal conclusions on the record that Chuckie's acted in good faith. Notes of Testimony, September 14, 1994 at 115–16. Moreover, American Express does not argue that Chuckie's failed to act in good faith. Based on Giunta's actions, we cannot say that the trial court erred in concluding that Chuckie's acted in good faith. Therefore, section 3302(a)(2) is satisfied. Regarding section 3302(a)(3), there was no evidence presented that Chuckie's had any notice that the Dillabough and Lynn money orders were stolen when he cashed them. Accordingly, the record demonstrates as a matter of law that Chuckie's was a holder in due course. Because Triffin stands in Chuckie's shoes as its assignee, Triffin has attained the status of a holder in due course. 13 Pa.C.S. § 3201.

American Express further contends that even if Triffin qualifies as a holder in due course, the money orders are still not enforceable because the legend on their backs limits the "tenor" of the instruments. Pursuant to 13 Pa.C.S § 3413(a), American Express claims that it is only obligated to pay an instrument "according to its tenor." The 1979 Commercial Code does not define "tenor." The 1992 amendments to section 3413(a), however, substitute the word "terms" for the word "tenor." 13 Pa.C.S. § 3413(a) (1992). The Comments accompanying the 1992 amendments to section 3413 indicate that new subsection (a) is consistent with its predecessor. Therefore, it appears that no substantive change was intended by the substitution of the word "terms" for the word "tenor" and we will treat these words synonymously. Thus, American Express is essentially arguing that each money order should be enforced according to its terms, which state that the money order "WILL NOT BE PAID IF IT HAS BEEN ALTERED OR STOLEN OR IF AN ENDORSEMENT IS MISSING OR FORGED."

As previously discussed, the legend on the back of the money orders is merely a warning that restates American Express' defenses against persons other than holders in due course in the event of alteration, theft, lack of endorsement or forgery. These defenses are ineffective against a holder in

due course. 13 Pa.C.S. § 3305; 13 Pa.C.S. § 3407(c). Because Triffin has attained holder in due course status through the assignment of the money orders from Chuckie's, American Express cannot enforce the defenses against him. Accordingly, American Express is liable to Triffin for the face value of the money orders.

The Order of the Superior Court is affirmed and this matter is remanded to the trial court for the entry of an order consistent with this Opinion.

CASTILLE, J., files a dissenting opinion in which CAPPY, J., joins.

CASTILLE, Justice, dissents.

The majority concludes that appellee Robert J. Triffin ("appellee") is entitled to recover the value of the money orders at issue because the money orders were negotiable instruments and because appellee was a holder in due course of those negotiable instruments. However, since the money orders at issue contained express conditional language which precluded negotiability under the relevant statute, I must respectfully dissent from the majority's conclusion.

The requirements for negotiability are set forth at 13 Pa. C.S. § 3104, which provides: [1]

(a)  **Requisites to negotiability.—Any writing to be a negotiable instrument within this division must:**

(1)  be signed by the maker or drawer;

(2)  **contain an unconditional promise or order** to pay a sum certain in money and no other promise, order, obligation, or power given by the maker or drawer except as authorized by this division;

(3)  be payable on demand or at a definite time;  and

---

**1.**  In 1992, subsequent to the transactions at issue in this case, section 3104 was clarified by amendment.

(4) be payable to order or to bearer.

13 Pa.C.S. § 3104 (emphasis added).

At issue here is the second of the four statutory prerequisites to negotiability, the requirement of an "unconditional" promise or order. Regarding this prerequisite, section 3105 provides:[2]

> (a) **Unconditional promise or order.**—A promise or order otherwise unconditional is not made conditional by the fact that the instrument:
>
> (1) is subject to implied or constructive conditions;
>
> . . . .

The comment to section 3105 states:

> 1. . . . Nothing in [paragraph (a) subsection (1) ] is intended to imply that language may not be fairly construed to mean what it says, but implications, whether of law or fact, are not to be considered in determining negotiability.

Thus, the statute clearly distinguishes between language which creates an implied condition and language which creates an express condition. The latter renders a promise or order non-negotiable while the former does not. This conclusion derives further support from the revised § 3106(a), which provides that". . . a promise or order is unconditional unless it states (1) an express condition to payment . . .".[3]

Here, the operative language in the money orders at issue clearly created an "express" condition and thereby rendered the money orders non-negotiable. The language at issue states:

---

**2.** In 1992, subsequent to the transactions at issue in this case, section 3105 was clarified and replaced by 13 Pa.C.S. § 3106.

**3.** Although section 3106 was not revised until 1992, it is axiomatic that where new legislation is merely declaratory of existing law or clarifies existing law, it may be given retroactive effect. *Banic v. WCAB,* 550 Pa. 276, 705 A.2d 432, 437 (1997); *Simmonds v. State Employees' Retirement System,* 548 Pa. 219, 226, 696 A.2d 801, 804 (1997); Sutherland, *Statutes and Statutory Construction* § 22.34 (5th ed.1993). The official comment to the revised section points out that the section is not changing the law. Therefore, the revised section may be given retroactive effect insofar as it provides further evidence that express conditions to payment serve as a bar to negotiability.

*IMPORTANT*
*DO NOT CASH FOR STRANGERS*

THIS MONEY ORDER WILL NOT BE PAID IF IT HAS BEEN ALTERED OR STOLEN OR IF AN ENDORSEMENT IS MISSING OR FORGED. BE SURE YOU HAVE EFFECTIVE RECOURSE AGAINST YOUR CUSTOMER.

PAYEE'S ENDORSEMENT

This language explicitly conditions payments on the money orders' not being altered or stolen and the endorsements' not being missing or forged. The use of the word "if" renders the condition an express one, since "if" by definition means "on **condition** that; in case that; supposing that." Webster's New World Dict., 2d College ed. (emphasis added).

Furthermore, the official comment to revised section 3106 explains what the code intends by drawing the distinction between implied and express conditions:

> If the promise or order states an express condition to payment, the promise or order is not an instrument. For example, a promise states, "I promise to pay $100,000 to the order of John Doe *if* he conveys title to Blackacre to me." The promise is not an instrument because there is an express condition to payment. However, suppose a promise states, "In consideration of John Doe's promise to convey title of Blackacre I promise to pay $100,000 to the order of John Doe." That promise can be an instrument if [section 3104] is otherwise satisfied.

13 Pa.C.S. § 3106 (1992 amended version)(emphasis added). Accordingly, the use of the word "if" creates an express condition which otherwise might be lacking, and thereby precludes a money order from being a negotiable instrument under the statute. The language at issue in this case created the same type of express condition which is embodied in the

Comment; consequently, the language precludes the money orders from being negotiable instruments.[4]

The reasons proffered by the majority to justify its departure from this seemingly inescapable statutory logic are strained. First, the majority cites a case, decided by the Louisiana Court of Appeal in 1974, in which a condition incorporating the word "if" was construed not to bar negotiability.[5] In that case, the Louisiana Court did not evaluate the significance of the word "if" or the significance of the condition which that word introduced. Moreover, in 1974, Louisiana had not yet adopted Article III of the Uniform Commercial Code ("UCC"). Hence, it appears that the Louisiana decision was decided against the backdrop of the Code of Napoleon. *See 9 to 5 Fashions, Inc. v. Petr L. Spurney*, 538 So.2d 228, 233 (La.1989)(discussing roots of Louisiana's civil code in the Napoleonic code). Pennsylvania, on the other hand, has adopted Article III of the UCC, which speaks directly to the issue presented in this case, as explained *supra*. A decision by an intermediate Louisiana appellate court interpreting French legal principles should not override the explicit statutory guidance furnished by the Pennsylvania legislature on an issue of Pennsylvania law.

The majority also seizes on Comment 4 to 13 Pa.C.S. § 3104, which states that "any writing which meets the requirements of subsection [ (a) ] and is not excluded under Section [3103] is a negotiable instrument, and all sections of this [Division] apply to it, **even though it may contain additional language beyond that contemplated by this sec-**

---

**4.** Additionally, I note that if there was any doubt about this conclusion, the doubt would be resolved *against* negotiability. *See United States v. Gonzalez*, 797 F.2d 1109, 1113 (1st Cir.1986)("when a writing is ambiguous with respect to negotiability, the conclusion to be reached is that it is *not* negotiable")(emphasis added)(other citations omitted).

**5.** Specifically, the condition provided: "CASH ONLY IF RECOURSE FROM ENDORSER IS AVAILABLE. IF THE MONEY ORDER HAS NOT BEEN VALIDLY ISSUED OR HAS BEEN FRAUDULENTLY NEGOTIATED, IT WILL BE RETURNED. KNOW YOUR ENDORSER (sic) CASH ONLY IF RECOURSE IS AVAILABLE." *Hong Kong Importers, Inc., v. American Express Co.*, 301 So.2d 707, 708 (La.App. 1974).

**tion"** (emphasis added by majority). Since, as explained *supra,* the money orders contained language which precluded them from satisfying subsection (a), the quoted language from Comment 4 does not further the majority's argument.

Finally, the majority attempts to support its conclusion by referring to the principle that "purported conditions on an otherwise negotiable instrument, that merely reflect other provisions of the law, do not vitiate negotiability." Op. at 609 (citations omitted). The majority contends that the language at issue amounts merely to a restatement of appellant's statutory defenses against payment where there has been alteration (13 Pa.C.S. § 3407), theft (§ 3306(4)), absence of signature (§ 3401) and forgery (§ 3404). The majority overlooks the fact that all of these statutory defenses are, by their own terms, ineffective against holders in due course. On the other hand, the language at issue here – which categorically states that the money order will not be paid if it was stolen—is operative even against holders who have taken in due course. As noted in the Comment to section 3105(a)(1), conditional language may be fairly construed to mean what it says. By its plain terms, the language at issue here sweeps beyond the scope of appellant's statutory defenses, and therefore does more than simply "reflect other provisions of the law."

In sum, the statute at issue in this case is devoid of ambiguity, and the application of that statute to these facts compels a conclusion contrary to that reached by the majority. Consequently, I respectfully dissent.

CAPPY, J., joins this dissenting opinion.