## Argeros v. Knock on Wood Construction Co.

*Erik J. Conrad,* for plaintiff
*Joshua A. Gildea,* for defendant

FORD, *J.*, May 15, 2013—This is an appeal in a breach of contract case involving the construction of a deck on the outside of a residence. After a non-jury trial that was conducted on November 29, 2012, and January 24, 2013, I entered a verdict on count I of the complaint, breach of contract, in favor of plaintiff, William Argeros, who is the owner of the residence, and against defendant, Knock On Wood Construction Company, which was the construction firm that built the deck. The verdict amount was $13,550,

the amount plaintiff paid for the construction of the deck. As I explain in this opinion, the verdict was proper because the problems with the construction of the deck were pervasive which made it both unsound and unsightly.

I entered the verdict on March 8, 2013. Defendant filed a post-trial motion on March 18. I denied that on March 22. Defendant filed a notice of appeal to the appellate court on April 15, 2013, from the order dated March 22 denying the post-trial motion. Defendant had a judgment entered on May 9, 2013, in accord with the Superior Court's directive dated May 3.

Defendant filed a statement under Pa.R.A.P. 1925(b) ("concise statement") in which it identified five issues that it wants addressed on appeal. I discuss each issue in turn in this opinion which I file under Pa.R.A.P. 1925(a). I set forth my findings of fact from the trial which set the context for each issue.

## Findings of Fact

1. Plaintiff, William Argeros, lives at 4117 Emerson Lane, Allentown, Lehigh County, Pennsylvania.

2. Defendant, Knock On Wood Construction Company, is a corporation with its principal place of business at 138 North New Street, Nazareth, Northampton County, Pennsylvania. This corporation, owned by Norman Boell, is in the business of building custom decks.

3. On June 8, 2009, plaintiff and defendant entered a written contract (Exhibit P-1) by which defendant agreed to provide materials and build a deck for plaintiff at his

Emerson Lane residence. The deck was to be a 16 feet by 21 feet Trex deck. Under the contract, plaintiff agreed to pay defendant $13,550 for construction of the deck.

4. By the end of August 2009, plaintiff had paid defendant the full $13,550 pursuant to the contract. By that date, defendant had constructed a deck which it represented was built in accord with the contract.

5. In the initial period after construction of the deck, there was a cordial relationship between the parties. Plaintiff thanked Mr. Boell for his efforts by giving him Phillies tickets. However, after plaintiff started to use the deck, he noticed problems with it. In response to complaints from plaintiff, defendant did additional work on the deck. Defendant did this without an extra charge to plaintiff.

6. As time passed, plaintiff detected more problems with the deck. Plaintiff brought some of these issues to the attention of defendant. Defendant offered to come to plaintiff's residence to attempt to correct the problems. However, plaintiff did not respond to defendant's offers. Rather, plaintiff initiated the present suit.

7. When defendant excavated the holes for installation of the support posts and any concrete footings that it may have installed (it is unclear whether defendant installed concrete footings), it left the holes open for one-and-a-half days for inspection by the South Whitehall Township residential building inspector. Defendant did not advise plaintiff nor the inspector that the holes were available for inspection. Defendant then proceeded with further

construction oblivious to whether an inspection of the holes and any concrete footings was conducted.

8. The support posts for the deck are not mechanically anchored to any concrete footings. Such attachment would have added stability to the deck.

9. The stair stringers rest on the ground instead of on concrete footings.

10. The support posts for the deck extend into the ground subjecting them to quicker onset of deterioration. The posts should have been installed on concrete footings that extend above the ground.

11. The girders or beams are not carriage bolted to the support columns. Carriage bolting would have provided proper support against vertical and lateral loads. Instead, the girders are attached to the support columns by the random use of nails and screws.

12. Several of the fasteners used on the deck are over-driven which has led to cracking of the wood used on the deck and can lead to further cracking.

13. A deck ledger attaches the deck to a wall of the residence using nails and screws. The ledger was installed outside or over the exterior siding of the house wall. Gray plastic flashing was installed over the top edge of the ledger. However, there was no flashing installed behind the ledger, creating the potential for water leakage.

14. Although the deck ledger is attached to the house wall, the deck utilizes two rows of support posts and girders. This feature suggests that defendant constructed

the deck as a free-standing structure. To the extent that defendant designed the deck to be free-standing, the installation of bracing was necessary for stability. This was not done.

15. Joists are attached to the ledger board and rim joists with nails. Joist hangers should have been used to make this aspect of the deck firmer.

16. The stair stringers as attached to the deck are unsafe. Wooden blocking with nails, screws and some lag bolts were used. Proper hanging of the stair stringers required use of approved adjustable stair hangers. The wooden blocking that was used is unsightly, is of irregular shape and is splitting along its length where the hardware was installed in the blocking.

17. Some of the spindles in the railing system around the deck are spaced more than four inches apart. This creates the possibility of body parts' getting stuck in those rails that are separated by more than four inches.

18. There is side to side movement of the railing with minimum pressure. This creates a hazard of falling through the railing for anyone who may lean against it with considerable pressure.

19. Some of the Trex boards used on the deck are light-colored interspersed with others which are dark-colored. Each board is fastened to the deck with center screws. According to Trex specifications, the boards should have been attached to the deck with screws placed in each joist in a zigzag pattern. This recommended configuration would prevent the boards from rocking.

20. The two gates to the two sets of stairs leading from the deck cannot be completely closed due to the uneven and imprecise construction of the deck railing system.

21. When one stands on the deck, that individual feels an unsteadiness to the structure.

22. The completed deck did not pass inspection by the South Whitehall Township building inspector because of the existence of violations of the construction code adopted by the township. Violations found by the inspector stemmed from certain deficiencies noted above, separately or in various combinations. The inspector posted a notice on the deck forbidding use of it.

23. The deck is unsafe for its intended use and is unsightly at various locations.

24. The unsafe conditions on the deck and the poor workmanship of it are pervasive. The additional remedial work suggested by defendant is insufficient. A new deck would have to be properly built to give plaintiff the deck for which he contracted.

Discussion and Conclusions of Law

The first issue raised in the concise statement is "whether the trial court erred in finding that only demolition of the deck and construction of a new deck could provide plaintiff with the benefit of his bargain, particularly where the township inspector testified that all issues with the deck were repairable." I did not order demolition of the deck or construction of a new deck. Rather, I entered a verdict awarding plaintiff the proper amount of damages

as a result of defendant's breach of the contract that the parties entered.

Neither in this first issue nor in the other four issues raised in the concise statement does the defendant challenge the findings of fact as to the defects and deficiencies in the deck. Each problem with the construction of the deck enumerated in the findings of fact was described by the witnesses presented by the plaintiff at the trial. These witnesses included Paul Ashmore and Josh Heft who have experience in the construction of decks. Carl Wilson, the residential building inspector for South Whitehall Township, described many of the problems with the deck. Defendant's own witnesses, Matthew Breyer and Norman Boell, the owner of the defendant corporation, acknowledged some of the defects. Many of the defects were obvious to a layman such as I am. I personally observed most of the defects during the on-site inspection on December 12, 2012. Therefore, there is an ample, unchallenged record to support my conclusions as to each defect I described in the findings of fact.

Although defendant's phrasing of the first issue is not precise, it does adequately present for review the primary point of contention from the trial. Could plaintiff receive the deck for which he contracted by simply being paid the cost of the repairs suggested by defendant or are the problems with the deck fundamental and spread throughout so that repairs would be useless? The extent of the defects in the deck was a determination for me as the fact-finder. My finding that the deck was pervasively unsound and unsightly which repairs could not sufficiently remedy

ought to be left intact because it is supported by competent evidence. *See Triffin v. Dillabough*, 552 Pa. 550, 716 A.2d 605 (1998) (noting that an appellate court is bound by a trial court's findings of fact based on competent evidence). There was competent, believable testimony that the deck has serious structural defects and that repairs alone are insufficient to fix the defects. All of this was confirmed by my on-site visit to the residence and deck in December.

At the conclusion of defendant's statement of the first issue in the concise statement, in arguing that I should have entered a verdict for repairs to the deck only, defendant adds the phrase "where the township inspector testified that all issues with the deck were repairable." The building inspector, Mr. Wilson, gave explanations on how to correct many of the deficiencies but he did not explain all of them, for example, the lack of or inadequacy of concrete footers. He testified about what was needed to pass his inspection, not about whether plaintiff could get the deck for which he contracted through repairs only. This latter point was to be a determination for the finder of fact.

The second issue reads "whether the trial court erred in holding that the parties' contract required anything more than a deck which could pass inspection." Plaintiff contracted with defendant for construction of a deck which conformed to Trex specifications. Also, in a construction contract such as this, the builder gives an implied warranty that it will do the work in a skillful, careful and workmanlike manner and that the structure will be reasonably suitable for its purpose. *See Metropolitan Edison Company v. United Engineers & Constructors,*

*Inc.,* 4 Pa.D. & C. 3d. 473 (C.P. Philadelphia 1977); and *Pontiere v. James Dinert, Inc.,* 426 Pa.Super. 576, 627 A.2d 1204 (1993). In entering the verdict, the court held the defendant to the implied warranty that he gave plaintiff when he agreed to undertake the work. He breached that warranty by providing a deck that is unsafe and unsightly. The failure to construct a structurally sound deck amounts to a failure of consideration by defendant and constitutes a breach by it of the parties' contract. Furthermore, there is no provision in the contract (Exhibit P-1) whereby the defendant's obligation was to provide a deck which would pass inspection. (It did not pass inspection and it remains condemned for use by anyone.)

Defendant's next issue is "whether the trial court erred in awarding damages against defendant in the amount of $13,550 plus interest, thereby including amounts actually paid to a third party under the contract." With this third issue, I believe (but I am not sure) defendant is reiterating some of the contentions that he made in the post-trial motion which he filed on March 18, 2013. Those contentions were:

17. Moreover, plaintiff retains the materials he purchased from Fox Building Supply at a cost of $8,950.

18. The defendant received only $4,550 from plaintiff.

19. It is error to award defendant (sic) the value of funds paid to Fox Building Supply, a third party.

20. The "return of the money [Argeros] paid" cannot include money not paid to defendant for defendant's

services under the contract.

This issue was not raised at trial so there is no record about issues regarding supplies of materials for the deck. Instead, in the contract (Exhibit P-1), defendant undertook the responsibility to provide plaintiff one "16 X 21 Trex deck project including labor and materials" for $13,550 which plaintiff paid. The provision of materials for the deck which was poorly constructed was the responsibility of defendant and no one else.

The fourth issue is "whether the trial court erred in awarding 'return of the money [plaintiff] paid' as damages, rather than the cost to repair as the proper measure of damages in this matter." Contrary to defendant's assertion, I applied the correct measure of damages in entering the verdict.

The proper measure of damages in an action for breach of a construction contract is found in section 346 of the Restatement (First) of Contracts. The pertinent portions of that section are:

(1) For a breach by one who has contracted to construct a specified product, the other party, can get judgment for compensatory damages for all unavoidable harm that the builder had reason to foresee when the contract was made, less such part of the contract price as has not been paid and is not still payable, determined as follows:

(a) For defective or unfinished construction he can get judgment for either

(i) the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste; or

(ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff; if construction and completion in accordance with the contract would involve unreasonable economic waste.

This section of the Restatement has been adopted as the law in Pennsylvania. *See Gadbois v. Leb-Co Builder, Inc.,* 312 Pa.Super. 144, 458 A.2d 555 (1983).

I have already explained that the deck cannot simply be repaired to provide plaintiff the deck for which he contracted. Thus, section 346(1)(a)(i) of the Restatement, the cost of completion (repair) argued by defendant, cannot be the proper measure of damages in this case. Rather, section 346(1)(a)(ii) provides the pertinent measure, namely, the difference between the value that the deck contracted for would have had if completed properly, $13,550, and the value of the performance that has been received by plaintiff, $0. That difference is $13,550, the verdict in this case.

The final issue is "whether the trial court erred in excusing plaintiff from the obligation to mitigate his alleged damages by maintaining or allowing defendant to repair the deck."

A party injured by a breach of contract is under a duty

to use reasonable care to mitigate the damages suffered as a result of the breach. *Portside Investors, L.P. v. Northern Insurance Company of New York*, 41 A.3d 1, 15 (Pa. Super. 2011). However, mitigation is not an issue under the evidence in this case. Plaintiff has done nothing to maintain the deck since he received the letter (Exhibit P-8) from and had the conversation with Mr. Wilson, the inspector for the township. In these, Mr. Wilson prohibited any use of the deck. There was no evidence about how maintenance by plaintiff over the many months that the deck was condemned would have corrected or improved the conditions on the deck since many of the problems are structural. Plaintiff's loss with this deck stems from the original construction as opposed to deterioration through lack of maintenance.

For all of these reasons, the appeal should be denied.